Littleton, Judge,
delivered the opinion of the court:
■ The appellants, as members, and as the representatives of, and on the relation of the Indians of California, filed an original and later an amended petition with the Indian Claims Commission in which they presented certain claims under Sec. 2 of the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049. It is unnecessary here to discuss the allegations of the petition other than to say that the claim presented by the petition on behalf of the appellants, which are now and for a long time past have been known and recognized as the- “Indians of California,” is for compensation for certain lands and other property alleged to have been taken by the United States many years ago. The question presented to the Commission in the petition, and to the court in this appeal, is whether the “Indians of California” may be regarded as an “identifiable group of American Indians” for the purpose of that provision of Sec.. 2 of said Act, which provides that “The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska”; and for the purpose of Sec. 10 of said Act which provides as follows:
Any claim within the provisions of this Act may be presented to the Commission by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members; but wherever any tribal organization exists, recognized by the Secretary of the Interior as having authority to represent such tribe, band, or group, such organization shall be accorded the exclusive privilege of representing such Indians, unless fraud, collusion, or laches on the part of such organization be shown to the satisfaction of the Commission.
*351 The appellee filed a motion with the Commission to dismiss the petition on the ground that the group of Indians known as the “Indians of California” was not such an identifiable group entitled to present a claim to the Commission, as contemplated by the Indian Claims Commission Act. The Commission overruled this motion on the ground that important issues of fact were involved and the question raised by the motion should only be determined when raised by appropriate pleadings and after hearing on the question of whether appellants should be regarded as an identifiable group within the meaning of the statute. Thereafter, the appellee filed an answer on the issue of capacity of appellants to maintain the action. After a hearing the Commission entered certain Findings numbered 1 to 15, inclusive, as set forth below:
1. Jurisdiction is claimed for the cause of action asserted under the provisions of section 2 of the Indian Claims Commission Act, which said sections reads as follows:
Seo. 2. The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska: * * *
2. The claim is filed by individuals “as members of, and as representatives of, and on relation of the Indians of California, Petitioners.” The Indians of California are alleged to be an identifiable group of Indians com-gosed of all Indians who were residing in the State of alifornia on June 1, 1852, and their descendants now living, as set forth by the act of May 18, 1928 (45 Stat. 602), and as thereafter amended.
3.The claim asserted is based on the alleged ownership of lands owned, used, occupied and possessed, in the accustomed Indian manner, by the Indians of California and (1) taken and sold for defendant’s own account and (2) taken and appropriated for defendant’s own use without compensation to petitioners therefor.
4.Unless otherwise indicated, the term “California Indians,” as used in these findings of fact, shall mean those Indians, and their descendants, who have inhabited the territory now known as the State of California from time immemorial.
*352 5. Prior to the treaty of Guadalupe Hidalgo, proclaimed on the 4th day of July, 1848, 9 Stat. 922, the California Indians inhabited the principal part of the State of California, and during the time that said area was under the dominion of the Kingdom of Spain and the Republic of Mexico.
6. That the California Indians during that period and for many years after July 4, 1848, comprised a number of tribes, nations, bands, and rancherías or villages. Each group occupied a definite part of the area of the State.
1. After the cession of California to the United States by the treaty of July 4,1848, tens of thousands of white people entered the State, and as a result of this great influx of white people, the Indian communities were disrupted, many of their members killed, and those remaining, scattered throughout the State. As a result of this treatment of the California Indians, and the policies of the United States, group life among them was largely destroyed, and in some cases, few, if any, members of the original groups survived. The greatest disruption and destruction of group life occurred in the northern area of the State. However, the influx of white people and governmental policy was felt throughout the State and had the same effect upon all of the Indian groups that it had in the northern section.
8. On September 30, 1850, 9 Stat. 544, 558, the Congress appropriated the sum of $25,000 “to enable the President to hold treaties with the various Indian tribes in the State of California.” Pursuant to this Act the President named three commissioners to negotiate treaties with said tribes, and as a result of the efforts of the commissioners, between the 19th day of March, 1851 and the 7th day of January, 1852, eighteen treaties were consummated between 139 tribes, nations, and bands of California Indians, according; to the number of groups indicated in the treaties. It is probable, however, that in spite of the 139 signatories to these treaties they were not made with more than about 56 actual tribes, nations, or bands.
By these treaties those Indian groups relinquished and quitclaimed to the United States all their right, title, claim or interest they may have had to any lands within the limits of the State of California, but there was set aside or reserved an area of land described in each treaty, to be held for the permanent occupancy of the tribes* nations and bands signing the treaty.
*353 These eighteen treaties were submitted to the Senate of the United States by the President for ratification on June 1, 1852, and after the submission, the Senate, on the 28th day of June, 1852, refused to advise and consent to the ratification of each and all of said treaties. (See IV Kappler 1081-1128.) Said treaties have never been ratified.
9. On March 3, 1851, 9 Stat. 631-634, the Congress passed an Act entitled “An Act to ascertain and settle land claims in the State of California.” By the provisions of this Act every person (and this included Indians) claiming lands in California was required to submit evidence, before a Commission appointed for that purpose, to sustain his claim, and it was further provided that all lands, the claims to which shall not have been presented to the commissions within two years after the date of the Act, shall be deemed, held and considered as a part of the public domain of the United States. That none of the individual California Indians and none of the tribes, nations, bands or rancherías of California Indians presented or made claims to lands under the provisions of said Act and whatever lands the California Indians were entitled to became part of the public domain.
10. On May 18,1928,45 Stat. 602, the Congress passed an Act permitting the “Indians of California” to sue the United States for all claims of whatsoever nature the “Indians of California” may have against the United States by reason of lands taken from them by the United States without compensation, or for the failure or refusal of the United States to compensate them for their interest in lands in said State, which the United States appropriated to its own purposes without the consent of said Indians.
Said Act further provided that “for the purposes of this Act the Indians of California shall be defined to be all Indians who were residing in the State of California on June 1, 1852, and their descendants now living in said State.” A suit was brought as provided by said Act and resulted in a judgment on December 4, 1944, in favor of the “Indians of California.” (102 C. Cls. 837-8.)
11. Said Act of May 18,1928, contained this provision:
Sec. 7. For the purpose of determining who are entitled to be enrolled as Indians of California, as provided in section 1 hereof, the Secretary of the Interior, under such rules and regulations as he may *354 prescribe, shall cause a roll to be made of persons entitled to enrollment. Any person claiming to be entitled to enrollment may within two years after the approval of this Act, make an application in writing to the Secretary of the Interior for enrollment. At any time within three years of the approval of this Act the Secretary shall have the right to alter and revise the roll, at the expiration of which time said roll shall be closed for all purposes and thereafter no additional names shall be added thereto: Provided, That the Secretary of the Interior, under such rules and regulations as he may prescribe, shall also cause to be made, within the specified time herein, a roll of all Indians in California other than Indians that come within the provisions of section 1 of this Act.
Said Section 7 was amended by the Act of April 29,1930, 46 Stat. 259, which merely extended the time for making applications for enrollment to May 18, 1932, and gave the Secretary of the Interior until May 18, 1933, within which to alter or revise the roll of the Indians of California.
Pursuant to the aforesaid provisions of section 7, as amended, a roll of the Indians of California was prepared containing some 20,000 enrollees and the Secretary of the Interior aproved said roll on May 16, 1933. It was these enrolled Indians for whom the judgment was obtained on December 4, 1944. Pursuant to the rules and regulations of the Secretary of the Interior, the tribal or band origin of each enrollee was shown on such roll.
After said judgment was rendered, and on June 30, 1948, 62 Stat. 1166, said section 7 was again amended, by which the names of all persons who had died since May 18,1928, were removed from said roll and there was added thereto the names of children of enrollees, and the descendants of such children, living on June 30, 1948, born since May 18,1928.
And said section, as amended as aforesaid, was further amended on May 24, 1950 (chap. 196, Public Law 524, 81st Cong., 2d session) by which the Secretary of the Interior was directed to revise the roll approved by him on May 16,1933, by adding thereto names of Indians not eligible for enrollment under the former acts, and who were living on May 24, 1950, all of whom must be descendants of Indians residing in California on June 1, 1852.
*355 12. Until passage óf tibe said jurisdictional.act of 1928 hereinabove referred to, allproposed legislation authorizing suit on behalf of the California Indians was in behalf of tribes or bands in said state.
13. At the time of the passage of said jurisdictional act of May 18,1928, there was not, and there is not now, and never has been, a nation, tribe or band of Indians known or identified as the “Indians of California.”
14. At the time of the treaty of Guadalupe Hidalgo, July 4, 1848, and for many years thereafter, there were upwards of 200 separate. tribes, bands, nations and rancherias of California Indians located in said State, who used, possessed and occupied definite areas of land therein until disbursed by or through the advent to the white man. The “Indians of California” as defined in and named as petitioners in the amended petition herein, were never, and are not now, a single group but consist of members, or descendants of members, of former separate and independent groups, known as tribes, nations, bands or rancherias, of California Indians, and have no common claim.
Petitioners have never as a single group or entity owned, used and occupied any definable area of land in said State. ' •
15. The legislative history of the passage of' the Indian Claims Commission Act does not support the contention that it was knowingly intended to authorize the assertion of a claim by the Indians of California as an identifiable group having a common or group claim.
Upon these findings the Commission held that petitioners, the Indians of California, could not be considered as an identifiable group of American Indians within the intent and meaning of the Indian Claims Commission Act, and dismissed the petition for lack of jurisdiction to consider the claims presented.
This decision of. the Commission was based upon the view that at the time the claims presented by the petition arose, during the years 1848 to 1852, there existed in California various groups of American Indians, commonly known as tribes, nations, bands, rancherias, and villages, and that each such group of Indians used and occupied a definite area of land in the State of California, and that by reason of this fact the claim in order to come within the jurisdiction of the Commission would have to be presented by,a petition by *356 or on behalf of each such tribe or band. In our opinion this interpretation of the language and intention of the jurisdictional provision of Secs. 2 and 10 of the Act is too restrictive. For the purpose of presenting claims, by petition, to the Indian Claims Commission for hearing and determination, we think the petitioners as the “Indians of California” come within the term “identifiable group,” as used in the statute. For jurisdictional purposes, which relate only to the authority to entertain the petition and to hear and determine claims, the merits and the nature of the proof that will be required to establish the claims, are not involved. The claims involved in the petition under consideration arose 100 years ago, about the year 1851, or 1852. After the cession of California to the United States by the Treaty of Guadalupe Hidalgo of July 4,1848, thousands of white people entered the State of California, and as a result of this great influx of white people the various bands, groups and communities of Indians which had up to that time existed in more or less distinct Indian fashion, were disrupted; many were killed and those remaining were driven from their places of abode and scattered throughout the state. As a result of this treatment of the Indians in California and the policies of the United States thereafter pursued with respect to them, the existence and life of the Indians in California, as bands or groups which had previously existed were disrupted and destroyed and such tribes, bands or separate groups constituting villages, have not since that time existed, and for this period of 100 years these Indians have been known only as the “Indians of California.”
In 1850 (9 Stat. 544-558) Congress appropriated a sum of money “to enable the President to hold treaties with the various Indian tribes in the State of California.” See Appendix to the Hearings before the Committee on Indian Affairs of the Senate, 79th Cong., 2d sess., on H. R. 4497, June 1 and 12, and July 13,1946, p. 83. Thereafter, in 1851,. some 18 treaties were negotiated with some 189 groups referred to therein as tribes, nations and bands of California Indians, but these treaties were never ratified and from that date forward the United States did little, if anything, for these Indians, and the various bands and groups of Indians. *357 in that State have not existed as distinct and recognizable tribes or bands of Indians as they had lived prior to 1848. See the Indians of California v. The United States, 98 C. Cls. 583; 102 C. Cls. 837.
A careful study of the history of the Indian Claims Commission Act, as disclosed by the Hearings before the Committee on Indian Affairs of the House of Representatives and the Committee on Indian Affairs of the Senate, 79th Cong., 1st and 2d sessions, respectively; the Report No. 1715 of the Senate Committee on Indian Affairs, 79th Cong., 2d sess., and the discussion of the Act, H. It. 4497, in the House of Eepresentatives on May 20,1946, Cong. Rec. 5408-5421, convinces us that Congress clearly intended in circumstances such as we have here, to confer upon the Indian Claims Commission jurisdiction to hear and determine claims that might be presented to it by groups of Indians, such as the Indians of California, even though the ancestors of such group existed as separate bands or villages at the time the claim arose. It was made clear in the hearings, the reports, and in the dis missions of the bill which became the Indian Claims Commission Act, that it was the intention of Congress that all claims of the nature specified in Sec. 2 of the Act, might be presented to the Commission for hearing and determination by any group of American Indians that could be sufficiently identified as having by inheritance a claim or claims of the character specified. In other words, Congress intended that all tribes, bands or groups of American Indians, should be given the right to have their day in court and have their claims adjudicated. Section 10 of the Indian Claims Commission Act expressly recognized that there would be claims coming before the Commission which could not be presented by a tribe or band having a common claim at the date of the filing of the petition. In our opinion that section permits a representative action on behalf of one or more tribes, bands or communities, which may have ceased to exist as such tribe or bands, if the individual members or the members of the group can be identified as members or descendants of members of a tribe or band previously existing.
The Commission held that the passage by Congress of the Jurisdictional Act of May 18,1928, 45 Stat. 602, authorizing *358 a suit in this court on behalf of the Indians of California, could be given no weight iii determining the intention of Congress with respect .to its use of the term “identifiable group of American Indians” in the Indian Claims Commission Act. We believe this Act of 1928 and its bistory in connection with the history of the Indian Claims Commission Act has an important bearing upon the question of what Congress intended by the use of the term “identifiable group of American Indians” in Secs. 2. and 10 of the Indian Claims Commission Act. The Indians of California who had many years ago lost their identity as distinct tribes., bands or villages, had been pressing their claim before Congress for many years, and we think it is clear that in enacting the Indian Claims Commission Act, Congress intended to confer upon the Indian Claims Commission jurisdiction to hear and determine such claims. In the many jurisdictional acts, enacted by Congress prior to the passage of' the Indian Claims Commission Act, the claims authorized by such acts to be presented for hearing and determination by this court were generally limited to legal and equitable claims by recognized, existing and named tribes or bands of Indians, arising under treaties, agreements or acts of Congress. In the enactment of the Indian Claims Commission Act, however, Congress greatly enlarged the type of claims that could be presented to the Commission for hearing and determination, and we think it likewise intended to enlarge the category of groups who might present and prosecute claims so as to include those groups of Indians existing at the time of the enactment of the Act in 1946 or when the petition was filed, which could be sufficiently identified as a group of descendants of Indians who were, at or about the time the claim arose, members of groups of Indians commonly known in the intercourse between the United States and Indians, as tribes, bands, villages, or communities. The fact that there may be among the group of Indians presenting a claim to the Commission which their ancestors had against the United States as tribes or bands many years ago, certain Indians who may not be descendants of those who were originally members of the tribes or bands at the time the claim arose, should not affect the jurisdiction of the Commission to hear and determine *359 the claim. That situation has existed in many cases which this court has had in the past. Individual Indians or small groups of Indians move from time to time from one place to another and become affiliated with other tribes, bands or groups of Indians, and when the tribe, band or group presenting the claim is willing to admit and accept such Indians as members of its group, no jurisdictional question arises. Adoption of Indians into a tribe or band has long been recognized. A matter of this character would, in any event, be one for determination by Congress in the payment and distribution of an award.
Subsequent to the passage of the Act of May 28, 1928, supra, the Secretary of the Interior pursuant to the direction contained in Sec. 7 thereof, as amended, made up a roll of the Indians of California containing approximately 20,000 en-rollees as members and descendants of the various tribes, bands, and villages of Indians in California at the time the claim now presented to the Commission arose, said roll being approved May 16,1933. This Act of 1928 was enacted eighteen years before the enactment of the Indian Claims Commission Act and, we think, it has significant bearing upon the proper interpretation of the term “identifiable group of American Indians,” especially since an authorized representative of the Indians of California appeared before the Senate Committee on Indians Affairs, when the Indian Claims Commission Act was under consideration, and presented a written statement concerning the history of the Indians of California and the claims which the Indians of California desired to have heard and determined under the new statute relating to the determination of Indian claims. This representative also filed with the Committee for its consideration the Journal of the expedition of Col. Redick- M’Kee, U. S. Indian Agent, among the Indians of California, through Northwestern California, performed in the summer and fall of 1851.
In view of the obvious purpose which Congress intended to accomplish by the passage of the Indian Claims Commission Act, as disclosed by its history, it is our opinion that the provisions relating to the jurisdiction and authority of the Commission to hear and determine claims presented, should be liberally construed. It may be that if an award should be *360 made upon final bearing by the Indian Claims Commission and reported to Congress pursuant to Secs. 21 and 22 of the Act, Congress may wish to legislate further concerning the payment and distribution of the award, but this should have no bearing upon the question of jurisdiction to hear and determine the claims presented to the Commission.
After a careful consideration and study of the facts and the history of the Indian Claims Commission Act, it is our opinion that the decision of the Commission and the arguments of appellee give little effect or meaning to the words “other identifiable group” and, in effect, treat this classification of Indians entitled to sue, as a tribe or band of Indians. They say that only an identifiable group existing as such group at the time the claim arose and having at the present time, a common group claim, is entitled to present claims to the Commission. Such holding, we think, unduly limits the number of Indian groups who are permitted to present claims to those Indians who enjoyed that liberty under many and various jurisdictional acts enacted from 1863 to 1948, when the Indian Claims Commission Act was enacted. We are at liberty, we think, to presume that the Congress intended to enlarge the category of groups of Indians entitled to present claims for hearing and determination when it added the words “or other identifiable groups,” not theretofore customarily used. To hold otherwise, would be to say that Congress intended to keep the category of claimants before the Indian Claims Commission closed to all except recognized tribes and bands, when it used words the ordinary meaning of which manifestly enlarged the groups entitled to assert claims. At the present time no tribal organization exists which has been recognized by the Secretary of the Interior as having authority to represent all the Indians of California, and, therefore, there exists under Sec. 10 no bar to suit by. some “other identifiable group of Indians.”
We think it is significant that in Sec. 13 (a) and (b) of the Indian Claims Commission Act relating to Notice and Explanation of the provisions of the Act to be sent out by the Commission and the establishment by the Commission of an Investigation Division, Congress directed that the notice and explanation of the provisions of the Act should be sent by *361 the Commission as soon as practicable “to the recognized head of each Indian tribe and band, and to any other identifiable groups of American Indians existing as distinct entities.” The words “existing as distinct entities” wei'e not used in the jurisdictional provisions of the first sentence of Sec. 2. For the purposes of Sec. 13 (a), we are of the opinion that the Indians of California, as they are now and for many years have been known, constituted an existing group of Indians sufficiently identifiable as a distinct entity to entitle them to notice and explanation of the provisions of the Act, either from the Indian Claims Commission or through the Superintendent of Indian Affairs.
Upon the whole record, we are of the opinion that the conclusion reached by the Commission that “The legislative history of the passage of the Indian Claims Commission Act does not support the contention that it was knowingly intended to authorize the assertion of a claim by the Indians of California as an identifiable group,” is not supported by the facts of record, the historical facts and the history of the Indian Claims Commission Act. We hold, therefore, that the claim or claims presented by the amended petition are within the jurisdiction of the Commission to hear and determine. The decision of the Commission dismissing the petition is therefore reversed, and the case is remanded to the Commission for further proceedings.
Howeií, Judge; Madden, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.