RED LAKE AND PEMBINA BANDS et al., Jay H. Hoag and Associate Attorneys for Petitioners in Docket 18-A

v.

TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, Docket 113, Little Shell Band of Chippewa Indians, Docket 191, and the United States.

LITTLE SHELL BAND OF CHIPPEWA INDIANS et al.

v.

RED LAKE, PEMBINA AND WHITE EARTH BANDS, et al., Turtle Mountain Band of Chippewa Indians and the United States.

Appeal No. 7-64.

United States Court of Claims.

Dec. 17, 1965.

Marvin J. Sonosky, Washington, D. C., for appellants Red Lake and Pembina Bands, et al., Jay H. Hoag and associate attorneys for petitioners in Docket 18–A; Jay H. Hoag, Duluth, Minn., atty. of record; Sonosky & White, Washington, D. C., of counsel.

Glen A. Wilkinson, Washington, D. C., atty. of record, for appellees Turtle Mountain Band and Docket 113 attorneys; Stormon & Stormon, Rolla, N. D., and Frances L. Horn, Washington, D. C., of counsel.

Robert J. Garrett, Chicago, Ill., for appellants Little Shell Band of Chippewa Indians and others in Docket 191; Lawrence C. Mills, Chicago, Ill., atty. of record; Mills & Garrett, Chicago, Ill., of counsel.

Ralph A. Barney, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for appellee United States.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

The Red Lake and Pembina Bands of Indians sought an award, in Indian Claims Commission Docket No. 18–A, for lands in North Dakota and Minnesota ceded to the United States by the Treaty of October 2, 1863, 13 Stat. 667 (Royce Area 445). The Turtle Mountain and Little Shell Bands—which are conceded to have been constituent parts of the Pembina Band—sought compensation under the Act of April 21, 1904, 33 Stat. 189, 194–96 (in Ind.Cl.Comm.Docket No. 113 for Turtle Mountain and in Docket No. 191 for Little Shell) for certain lands which partially overlapped with the area involved in Docket No. 18–A. The Turtle Mountain and Little Shell Bands each stipulated with the plaintiffs in Docket No. 18–A that Docket Nos. 113 and 191 could be consolidated for trial with Docket No. 18–A to the extent of this overlap. The Commission confirmed that understanding (after the trial had been had) and in 1958 entered an award (under a caption including the three docket numbers) for the Red Lake and Pembina Bands. See 6 Ind.Cl.Comm. 249; 9 Ind.Cl.Comm. 315, 457. This court affirmed, but directed that (a) the award should go to the tribal entities rather than the descendants of the bands as constituted in 1863, and (b) the total sum should be divided so that two-thirds would go to the Red Lakes and one-third to the Pembinas. Red Lake, Pembina and White Earth Bands v. United States, 164 Ct.Cl. 389 (January 1964) (Appeal No. 7–62).

On remand, the Commission modified its findings and order to accord with its view of this court's mandate. The Commission also made an award of attorneys' fees. The two current appeals flow from those new orders. The first challenge is by the Red Lake and Pembina Bands and their attorneys to the part of the fee-order which includes the lawyers for the Little Shell and Turtle Mountain Bands in the listing of counsel entitled to share in the attorneys' award allowable to the Pembina Band. The other appeal is by the Little Shell Band from the amended award naming the Pembina Band as the recipient of part of the

total award.[1] We discuss these two appeals separately, reversing in the fee appeal and affirming in the other.

## I

## ATTORNEYS' FEES

The final award to the Pembina Band was $237,127.82. In August 1964, under captions citing Dockets 18–A, 113, and 191, the Commission allowed the statutory maximum, ten percent of this sum, for attorneys' fees; made a general finding that "the attorneys in the subject cases" are entitled to receive the full ten percent; and lumped together (without apportionment) all the attorneys (or their executors or heirs) in all three dockets as entitled to the fee of $23,712.-78.[2] There is no attack on the amount of the fee, but the attorneys in Docket No. 18–A (and their client) challenge the award insofar as it includes and designates the attorneys in Dockets No. 113 and 191. It is said that those attorneys are entitled to no part of the fee allocated to the Pembina lawyers because they are not counsel for the plaintiffs in Docket No. 18–A and did not contribute to the award which the Commission made for the Pembinas.

We need not be concerned with the attorneys in Docket No. 113 (representing the Turtle Mountain Band); they have explicitly disclaimed, before the Commission and in this court, any right to any of the fee. But the attorney for the Little Shell Band (in Docket No. 191) insists on his legal right to participate, though he expresses a willingness to be satisfied with whatever share of the attorneys in Docket No. 18–A see fit to grant him. For its part, the Government moves to dismiss the appeal on the ground that this court has no jurisdiction over the dispute.

Section 15 of the Indian Claims Commission Act, 25 U.S.C. § 70n, embodies the Congressional directives with respect to attorneys' fees:

Each such tribe, band, or other identifiable group of Indians may retain to represent its interests in the presentation of claims before the Commission an attorney or attorneys at law, of its own selection, whose practice before the Commission shall be regulated by its adopted procedure. The fees of such attorney or attorneys for all services rendered in prosecuting the claim in question, whether before the Commission or otherwise, shall, unless the amount of such fees is stipulated in the approved contract between the attorney or attorneys and the claimant, be fixed by the Commission at such amount as the Commission, in accordance with standards obtaining for prosecuting similar contingent claims in courts of law, finds to be adequate compensation for services rendered and results obtained, considering the contingent nature of the case, plus all reasonable expenses incurred in the prosecution of the claim; but the amount so fixed by the Commission, exclusive of reimbursements for actual expenses, shall not exceed 10 per centum of the amount recovered in any case. * * *

This provision declares, in effect, that no attorney can be paid by a Commission-fixed fee unless he has rendered services promoting the particular claim for which recovery has been allowed. The fees are specifically characterized as being "for *all services rendered in prosecuting the claim in question*", and the Commission is told to set an amount which is "adequate compensation *for services rendered and results obtained*" (emphasis added). Congress thus made the performance of services a *sine qua non* for compensation. Neither the Commission nor this court has jurisdiction to apportion an award

---

1. Neither the fee-order connected with the award to the Red Lakes nor the award to the Red Lakes is involved in these appeals.

2. Over twenty names were set forth.

among the attorneys shown to be entitled to one. Chickasaw Nation v. United States, 121 Ct.Cl. 41, 44–45, 47 (1951). But there plainly is jurisdiction in the Commission to determine whether an attorney applying for a fee has performed any "services" "in prosecuting the claim in question"; under the Act, that is the minimum badge of entitlement which the applicant must display.[3]

▮ In this light we consider the Government's motion to dismiss the appeal. One of appellants' claims is that Lawrence C. Mills, Esq., counsel for the Little Shell Band, rendered no services in prosecuting the claim which resulted in the judgment of $237,127.82 for the Pembina Band. If that contention is correct, Mr. Mills was barred by Section 15 from sharing in the fee-award and should not have been included in the Commission's fee-order. This is not a question of apportionment among lawyers each of whom is qualified under the statute for a fee, but of Mr. Mills' basic statutory entitlement to any consideration at all. That precise issue the Commission was required, and had authority, to decide.

▮ Since this issue of statutory entitlement was within the Commission's province, this court likewise has jurisdiction to delve into it. Section 20(b) of the Claims Commission Act, 25 U.S.C. § 70s(b), gives the court jurisdiction to

review any "final determination" of the Commission, as well as certain interlocutory determinations of liability. The United States argues that the only final determinations subject to review are those deciding the merits of an Indian entity's claim. But the Act does not say so in terms, and we know of no reason why the phrase "final determination" should be so restricted, or should be given less than its full meaning. The Act nowhere suggests that certain areas of Commission decision are to be left without appellate review and guidance; on the contrary, Section 20(a) broadly empowers the Commission to certify to this court "any definite and distinct questions of law concerning which instructions are desired for the proper disposition of the claim." Nor does the legislative history intimate that this court's power to review should cover fewer subjects than the Commission's power to decide. And from the beginning the practice of the court has been to consider issues of all types which the Commission has resolved in the course of a proceeding (if the requisite finality has been present).[4] Jurisdiction to pass upon an appeal must, of course, not be confused with the scope of review. This court's right to overturn a Commission determination is limited by the statutory standards, but there is no subject-matter

3. The *Chickasaw Nation* opinion, supra, does not suggest the contrary. In that case it was plain on the record that the appealing attorneys had rendered substantial services; the issue was one of apportionment.

4. See Chickasaw Nation v. United States, supra, 121 Ct.Cl. 41, 47 (1951) (attorneys' fees); Seneca Nation of Indians v. United States, 122 Ct.Cl. 163 (1952) (prosecution of claim by individual member of tribe); McGhee v. Creek Nation and United States, 122 Ct.Cl. 380 (1952), cert. denied, 344 U.S. 856, 73 S.Ct. 91, 97 L.Ed. 665 (intervention); Delaware Tribe of Indians v. United States, 130 Ct.Cl. 782, 794, 128 F.Supp. 391, 398 (1955) (which entity can prosecute claim); Prairie Band of Potawatomi Indians v. United States, 143 Ct.Cl. 131, 165 F.Supp. 139 (1958), cert. denied, 359 U.

S. 908, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959) (intervention); Blackfeet and Gros Ventre Tribes of Indians v. United States, 162 Ct.Cl. 136 (1963) (intervention); Red Lake, Pembina and White Earth Bands v. United States, 164 Ct.Cl. 389 (January 1964) (division of award and to whom award should be made). Cherokee Freedman v. United States, 161 Ct.Cl. 787 (1963) (whether a claim is individual or tribal); Peoria Tribe of Indians v. United States, Appeal No. 12–63, decided March 12, 1965 (to whom award should be made); Minnesota Chippewa Tribe v. United States, 161 Ct.Cl. 258, 315 F. 2d 906 (1963) (same); Spokane Tribe of Indians v. United States, 163 Ct.Cl. 58 (1963) (same); Absentee Shawnee Tribe v. United States, 165 Ct.Cl. 510 (1964) (whether a claim is individual or tribal; representation of tribe by a constituent part).

exception to the court's jurisdiction to hear and consider challenges to Commission rulings.

■ We have no doubt, moreover, that the Commission's fee-award in this case has the requisite finality. Special findings of fact were rendered on attorneys' fees, as was a final order allowing them compensation. On that subject nothing was left for further consideration; and the fee-award was severed and severable from the judgment on the merits for the Pembinas. The disposition of this fee-matter was as final as a Commission order definitely denying intervention which this court has held sufficiently conclusive for appeal. Prairie Band of Potawatomi Indians v. United States, 143 Ct.Cl. 131, 133–135, 165 F.Supp. 139, 141–142 (1958), cert. denied, 359 U.S. 908, 79 S.Ct. 58, 73 L.Ed.2d 574 (1959). Similarly, the fee-order was final under the comparable standards of 28 U.S.C. § 1291 (review by courts of appeals of "final decisions" of district courts) and 28 U.S.C. § 1257 (review by Supreme Court of "final judgments or decrees" of state courts). See, e. g., Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Local 438, Const'r and General Laborers' Union v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963); Brady v. State of Maryland, 373 U.S. 83, 85, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ Rejecting, as we do, the Government's motion to dismiss the appeal, we reach the question whether the Commission could properly find that Mr. Mills performed compensable services relating to the award made for the Pembina Band. We assume that the sweeping finding referring to "the services ren-

dered by the attorneys in the subject cases"[5] was intended to cover him as well as the others. The problem is whether there is any support in the record for designating him in that determination.

We start with Mr. Mills' application for a fee (in June 1964). That document does not say or suggest that he performed any services in connection with the award of $237,127.82 to the Pembinas; the entire basis of the request is simply that he is attorney of record for the Little Shell Band, that the Little Shells were and are constituent parts of the Pembina Band, and that the Little Shells and Turtle Mountains are the only true successors of the Pembinas of 1863. Mr. Mills introduced no affidavits before the Commission nor did he present any sworn testimony. He and an associate did offer an oral argument which contended that Mr. Mills was entitled to a share in the fee because of his status as counsel for the Little Shell Band, but this argument did not discuss any actual participation of his in furthering the claim of the Pembinas which had been allowed by the Commission.

The facts, as we gather them, disclose that Mr. Mills did not perform any services which can be taken into account in fixing the fee which was awarded. He did not become attorney for the Little Shell Band until 1956, under a contract with that entity dated February 18, 1956, approved by the Commissioner of Indian Affairs on November 15, 1956, and filed with the Indian Claims Commission on December 12, 1956. He was formally named attorney of record for the petitioners in Docket No. 191 in the Commission's order of December 26, 1956. By that date the trials on the merits of the claim for Royce 445 in Docket No. 18–A (with which Nos. 131 and 191 were con-

5. Commission finding 10 on attorneys' fees states: "In view of the services rendered by the attorneys in the subject cases, the long period said cases have been in litigation, the results obtained, and in accordance with standards obtaining for prosecuting similar claims in courts of law, the Commission finds that the said attorneys are entitled to receive the full ten percent of the awards as provided in Section 15 of the Indian Claims Commission Act and their respective attorneys' contracts."

solidated for trial) had been fully concluded; Mr. Mills did not participate in those hearings. Nor did he appear or participate, in any material way, in the further proceedings before the Commission (including the trial on offsets) or in the appeal to this court (Appeal 7–62). He did not file a brief or memorandum on that appeal or present oral argument. The whole burden of the case, from start to finish, was carried by other attorneys. The mere fact that, because of the overlap, Docket No. 191 was consolidated for trial with Docket Nos. 18–A and 113 does not show, in itself, that Mr. Mills rendered services which were helpful in the prosecution of the vindicated claim. So far as the record reveals or we can tell, he did nothing leading to the award with respect to Royce Area 445, except to sign a formal stipulation or two.[6]

■ As Part II of this opinion shows, Mr. Mills and his partner, Mr. Garrett, did perform certain legal services in connection with the Commission's final award in 1964. They moved to have the Commission alter the form of its grant to the Pembina Band on the ground that the award ran to a nonexistent present-day entity. They also appealed to this court from that part of the award. The issue is whether these were "services rendered in prosecuting the claim in question." We think not. The "claim in question" is the demand, founded on the Treaty of October 2, 1863, supra, for compensation for Royce Area 445. In that claim, the Red Lakes, the Pembinas, the Turtle Mountains and the Little Shells were all interested in varying degrees. The Commission awarded $237,127.82 on behalf of and for the benefit of the Pembina Band (which concededly includes the membership of the Turtle Mountain and Little Shell Bands). The post-award services of Mills and Garrett have not been to prosecute *that* claim, in the sense of attempting to increase the amount, to fight off attacks upon it, or to see that it is quickly paid. Their services have been devoted, not to fostering the joint or mutual interests of all the involved groups, but to furthering a special demand of the Little Shell Band to be specifically named in the award—a position which seems adverse to the interests of the other claimants and at the least is not helpful to them. Where the "claim in question" is joint or combined, it is not a service in prosecution of that common concern to advance a particular advantage of only one of the interested groups at the expense of the others. The services for which the attorneys are to be compensated out of the $237,127.82 recovery consist of efforts to create and preserve that fund, not of unsuccessful attempts to capture it for one entity.[7] It may be that Mr. Mills' post-ward services can and will be compensated by the Little Shell Band in other ways or in other proceedings. Or it may be that, if he were successful in increasing their participation in the Pembina recovery, he would be eligible for some portion of their enlarged share. But he was not successful before the Commission in laying a foundation for that result and he does not prevail in this court (see Part II, infra). As the matter stands, there is no special or extra recovery for the Little Shell Band, as such, with respect to Royce Area 445, out of which Mr. Mills could seek a fee. In the prosecution of the only

6. The original stipulation agreeing to the consolidation of Docket No. 191 with Docket No. 18–A, for trial, was signed (in 1954) by a prior attorney for the Little Shell Band whose contract was not approved by the Commissioner of Indian Affairs. The similar stipulation signed by Mr. Mills in October 1957 (after he became attorney for the Band) came some time after the trial on the merits had already ended.

There is no reason to believe that Mr. Mills advanced any of the monies used for expenses in the consolidated proceeding.

7. Since the Little Shells are admittedly members of the Pembina group, and have already been held entitled to participate as such, the post-award services cannot be deemed an attempt to ensure their sharing on a *pro rata* or equal basis.

claim on which recovery was actually allowed he did not render any services.[8]

On the ground that Mr. Mills performed no services in prosecuting the claim for Royce 445, we reverse the Commission's fee-order insofar as it includes him. To the extent that the general finding as to attorneys' services covered him, it is unsupported by anything in the record. We also overturn the inclusion of the attorneys for the Turtle Mountain Band on their concession that they are not entitled to a fee in this proceeding. The fee-order should be modified to delete these names.[9]

II

### APPEAL OF THE LITTLE SHELL BAND

On remand from this court, the Commission issued a new final award (under Docket Nos. 18–A, 113, 191) declaring that "the petitioners herein" were entitled to recover $237,127.82 "on behalf of and for the benefit of the Pembina Band." The "petitioners herein" clearly included the Pembina Band, the Turtle Mountain Band, and the Little Shell Band. At the same time an order was also issued (likewise citing the three docket numbers) saying that "in compliance with the Court of Claims decision in this case the award will be made to the tribal entities rather than the descendants of the bands. All our previous findings and statements with reference to the 'members and descendants of members' of the two bands should be disregarded in compliance with the Court of Claims decision." This latter order had the effect of modifying the part of the Commission's original finding (finding 2) which dealt with the present-day status of the Pembina Band: "Although the Pembina Band does not presently maintain a tribal organization, *the members and descendants of members* of the Pembina Band, as it was constituted in 1863, are an identifiable group of American Indians within the meaning of the Indian Claims Commission Act, and have a common claim which they are authorized to have heard and determined by the Commission under Section 2 of said Act. The individual petitioners in Docket No. 18–A, * * *, are members of this group of Pembina Indians, and they have presented the claim arising out of the 1863 treaty cession of Royce Area 445 in a representative capacity on behalf of *all the descendants of* the Pembina Band as constituted in 1863." The emphasized portions of this finding were deleted by the Commission's post-remand order.

The Little Shell Band appeals from the amended final award on the ground that, as the Commission's findings and award now stand, there is no adequate determination that the Pembina Band is a present-day entity capable of presenting a claim and receiving an award under the Indian Claims Commission Act.[10] It is said that all that the modified findings now declare is that there is a Pembina

---

8. The consolidation of the three dockets was "for trial" and did not merge the separate claims into a new and enlarged cause of action. The three claims continued to retain their separate character. See Johnson v. Manhattan Ry., 289 U.S. 479, 496–497, 53 S.Ct. 721, 77 L.Ed. 1331 (1933) ; 2 B, Barron and Holtzoff, Federal Practice and Procedure, § 941, p. 172 (Wright, ed. 1961) ; 5 Moore, Federal Practice, § 42.02 (1964).

9. Our disposition of this appeal makes it unnecessary to consider the other grounds urged by appellants for reversal. In practical effect appellants will obtain full relief in this case by our judgment.

10. Section 2, 25 U.S.C. § 70a, gives the Commission jurisdiction of claims against the United States "on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska." Section 10, 25 U.S.C. § 70i, allows a claim to be presented "by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members" (with an exception for groups with a tribal organization). Individual claims are not cognizable under the Act. See, e. g., Cherokee Freedmen v. United States, 161 Ct.Cl. 787 (1963) ; Absentee Shawnee Tribe v. United States, 165 Ct.Cl. 510 (1964).

Band in existence, but that its composition and status are left wholly undetermined. We are asked to send the case back to the Commission to inquire into these questions and to make proper findings. The interest of the Little Shell Band in this aspect of the case appears to flow from its belief that it and the Turtle Mountain Band will turn out to be the only proper representatives and successors of the Pembina Band.

All parties agree that a substantial number of descendants of the Pembina Band of the last century are now living. Although the Commission's modified findings do not so state (at least explicitly), we can take that as an undisputed and conceded fact. If that is enough for an "identifiable group", there is certainly no need to disturb the Commission's final award and needlessly to require a technical crossing of the t's via a further modification of the findings to reinstate the excised references to descendants. But the gravamen of the Little Shell complaint is that an aggregation of such present-day descendants cannot constitute an "identifiable group" under the Act. Something more, very vaguely defined, is said to be necessary; and that something more, it is argued, has not yet been shown to exist outside the Little Shell and Turtle Mountain Bands.

We think that the appellant is mistaken in demanding proof of such an additional element. Congress made it very clear in the Act that a claim can be prosecuted and satisfied even though no recognized tribal organization is the claimant. See Section 10, 25 U.S.C. § 70i; Section 15, 25 U.S.C. § 70n. Awards have often been entered for such unorganized or informal groups. Since the statute imposes no organizational requirement, there is no basis for creating one by judicial gloss. And once the need for some formal organization is dismissed, we know of no outer boundary for defining an "identifiable group" which would properly stop short of a group of descendants of a once-organized tribe or band. Congress has said nothing about geographical propinquity, appearance on a common roll of Indians, recognition by the Secretary of the Interior, or any similar tie which appellant can suggest as sufficient. The Claims Commission Act gives us no leave to require such special indicia of communality. On the other hand, we must recognize that the Act seeks, generally, to remedy group wrongs done by the United States to the Indians in the century-and-three-quarters before the enactment in 1946; it would not accord with that paramount end to carve out from the proffered relief a substantial segment of those injuries simply because the historic group which suffered the detriment has been dissipated—perhaps as a consequence of the wrong—and no longer has any bond other than kinship. The essential theory underlying Thompson v. United States, 122 Ct.Cl. 348, 357–358, 359–361 (1952), cert. denied, 344 U.S. 856, 73 S.Ct. 91, 97 L.Ed. 665, was to make redress available for all these wrongs, including those claims held "by inheritance" alone,[11] and that

11. In *Thompson*, this court said (122 Ct. Cl. at 357): "A careful study of the history of the Indian Claims Commission Act * * * convinces us that Congress clearly intended in circumstances such as we have here [relating to the Indians of California], to confer upon the Indian Claims Commission jurisdiction to hear and determine claims that might be presented to it by groups of Indians, such as the Indians of California, even though the ancestors of such group existed as separate bands or villages at the time the claim arose. It was made clear in the hearings, the reports, and in the discussions of the bill which became the Indian Claims Commission Act, that it was the intention of Congress that all claims of the nature specified in Sec. 2 of the Act, might be presented to the Commission for hearing and determination by any group of American Indians that could be sufficiently identified as having by inheritance a claim or claims of the character specified. * * * Section 10 of the Indian Claims Commission Act expressly recognized that there would be claims coming before the Commission which could not be presented by a tribe or band having a common claim at the date of the filing

is likewise the theory of Peoria Tribe of Indians v. United States, Appeal No. 12-63, decided March 12, 1965—to cite only the first and the latest of this court's rulings on the point.

No change in this principle was announced by the recent decisions in Minnesota Chippewa Tribe v. United States, 161 Ct.Cl. 258, 315 F.2d 906 (1963); Spokane Tribe v. United States, 163 Ct. Cl. 58 (1963); Red Lake, Pembina and White Earth Bands v. United States, 164 Ct.Cl. 389 (January 1964); and Peoria Tribe of Indians v. United States, supra. Those cases were directed to a very different inquiry: the form the award should take once a tribe or "identifiable group" had been found. The practical problems were twofold: (a) whether living persons who were descendants of members of the tribe, band, or identifiable group as it existed at the time of the wrong—but who were *not* members of or represented by the suing group today—were entitled to participate in the award,[12] and conversely, whether persons who *are* members of the present-day group—but who are not actual descendants of members of the wronged group as of the time of the wrong—can benefit;[13] and (b) whether the award should run to individual persons or to the suing tribe, band, or identifiable group. The court held that, since the claim was on behalf of the entity, the award must run to the entity, not to individual persons or descendants. This was to make it clear, first, that the claim is a group not an individual demand, and, second, that nothing in the Indian Claims Commission Act bars any current member of the represented group from benefiting or requires the inclusion of descendants who are not now such members. Those questions are left open by the Act. The de-

termination of "how the award is to be paid and precisely who can participate in an award" remains for Congressional and administrative determination—the Indian Claims Commission Act standing wholly aside from that extra-judicial resolution. Peoria Tribe of Indians v. United States, supra. The form of the award should not pre-determine the persons who will benefit from the award to the group—as it might do if there were binding references to descendants of past members or comparable individualization of the decree.

But the *Minnesota Chippewa* line of decisions did not touch upon the present problem of the composition of the group possessed of the claim: whether an "identifiable group", capable of suing and of receiving an award, can consist simply of the current descendants of Indians who were members of the wronged group at the time of the wrong. That issue was not raised in those cases, and, as *Peoria Tribe* shows, the court did not intend to retreat in any way from the broad principles of Thompson v. United States, supra. The two problems are conceptually distinct. Today our question has to do with the composition of the group which is suing and to which an award is made; the other cases concerned an erroneous characterization or circumscription of the award which might cause it to cover persons outside the claiming group or less than all of the claiming group. The two questions can easily be confused where, as here, the suing group is comprised solely of descendants, but the difference becomes quite apparent where the claimant is an organized entity with some tribal organization or a constitution under the Wheeler-Howard Act, 25 U.S.C. § 476. In this case, in its present posture, the

---

of the petition. In our opinion that section permits a representative action on behalf of one or more tribes, bands, or communities, which may have ceased to exist as such tribe or bands, if the individual members or the members of the group can be identified as members or descendants of members of a tribe or band previously existing."

12. For example, whether there can be participation by a Navajo-descended citizen who is not a member of or represented by the organized Navajo Tribe today.

13. For example, whether there can be participation by an Indian who is a member of the Navajo Tribe today, but is not descended from a Navajo living at the time of and wronged by the past injury.

issue dealt with in *Minnesota Chippewa* may have minimal importance since the suing "identifiable group" and the aggregation of Pembina descendants may be one and the same.[14] Nevertheless, the rule of *Minnesota Chippewa* is separate from that of *Thompson-Peoria Tribe.* It is the latter which is pertinent here and governs this appeal.

For these reasons, we hold that the Commission committed no material error in making the award to the Pembina Band, without more.[15] The decision below, on this point must be upheld.[16]

Reversed as to attorneys' fees; affirmed as to the appeal by the Little Shell Band.

---

14. On the earlier appeal to this court, it was not so clear that the Pembina Band, as of today, was no more than such an aggregation.

15. As noted at the outset of this opinion, the Little Shell and Turtle Mountain Bands are admitted to be constituent parts of the Pembina Band.

16. Since we affirm, we need not consider the Pembina Band's arguments that the appeal should be dismissed because it is now moot, because the Little Shell Band is not aggrieved by the challenged determination (see fn. 15, supra), and because the issue is precluded by the prior appeal. On the Little Shell Band's appeal, the Government's formal motion to dismiss is, in substance, no more than an argument that the Commission was correct in holding the Pembina Band to be an "identifiable group." No debatable issue of this court's statutory jurisdiction under the Indian Claims Commission Act is presented by the Little Shell Band's appeal.