# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3460

_____

| | | |
|---|---|---|
| Ronald Delorme, as Hereditary | * | |
| Chief of the Little Shell Band | * | |
| of Indians and its Grand Council, | * | |
| | * | |
| Plaintiff - Appellant, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | North Dakota. |
| | * | |
| United States of America, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: November 17, 2003
Filed: January 13, 2004

_____

Before MURPHY, LAY, and FAGG, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ronald Delorme, hereditary chief of the Little Shell Band of Indians of North Dakota, brought this action for an accounting of funds to be distributed pursuant to two federal appropriations statutes dealing with Chippewa land claims. The district court[1] dismissed the action because the United States had not waived its sovereign immunity. Delorme appeals, and we affirm the dismissal because standing is lacking.

_____

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

Throughout the nineteenth century, the United States government entered into land cession treaties with American Indian tribes and bands. In 1863, the United States signed the Old Crossing Treaty with the Red Lake and Pembina Bands of Chippewa. Chief Little Shell led the Pembina Band and signed the treaty as its representative. The treaty ceded several thousand acres of Indian lands near the Red River of the North to the United States government in exchange for a nominal amount of money to be paid to the Chippewa bands.

In 1871, the United States shifted from a policy of making treaties with Indian tribes to a policy of allotment and assimilation, which included creating reservations. Felix Cohen, Handbook of Federal Indian Law 127 (3d ed. 1982). In 1873, the United States government purchased a township on the White Earth Reservation in Minnesota for the Pembina Indians. Red Lake, Pembina, & White Earth Bands v. United States, 6 Ind. Cl. Comm. 247, 249 (Ind. Cl. Comm. 1958). Not all of the Pembina moved to the township, however, and some remained in North Dakota. In 1882, an Executive Order formed a reservation for the "Turtle Mountain Band of Chippewas and such other Indians of the Chippewa Tribe as the Secretary of the Interior may see fit to settle there." Id. at 250. Although the United States intended for the Little Shell Band to move to the reservation permanently, part of the band never settled on the Turtle Mountain reservation.

In 1892, the United States government sent a commission, headed by P.J. McCumber, to negotiate with the Chippewa to extinguish aboriginal title to the land they still owned. Chief Little Shell attended the meetings but wanted to retain more land than acceptable to the commission. He walked out of the negotiations and never signed the subsequent McCumber Agreement.

In the late 1940s, lineal descendants of the signatories of the 1863 Treaty alleged to the Indian Claims Commission (Commission) that the United States was in default for not making the payments promised under the treaty. They also alleged

that they had not received fair compensation for the land ceded under it. In 1951, the Commission decided that the Pembina Indians could pursue their claims even though they were no longer organized as a band. See Red Lake, Pembina and White Earth Bands, and Minnesota Chippewa Tribe v. United States, 1 Ind. Cl. Comm. 575, 588 (Ind. Cl. Comm. 1951).

In 1958, the Commission awarded $2,760,245.64 to the descendants of the Red Lake and Pembina Bands. This judgment was upheld by the Court of Claims.[2] See Red Lake, Pembina & White Earth Bands v. United States, 164 Ct. Cl. 389 (Ct. Cl. 1964). The Little Shell Band of Chippewa Indians filed a second appeal after the Court of Claims remanded the decision. The band sought to be designated the sole successor of the Pembina Band and to receive the entire award because "it and the Turtle Mountain Band would turn out to be the only proper representatives and successors of the Pembina Band." Red Lake & Pembina Bands v. Turtle Mountain Band of Chippewa Indians, 355 F.2d 936, 943-44 (Ct. Cl. 1965). Rejecting the Little Shell Band's argument, the Court of Claims found that individual descendants of a previously existing tribe or band could bring cases and share in awards under the Indian Claims Commission Act. Id.

On July 29, 1971, the United States Congress enacted Public Law 92-59 to distribute the funds which had been awarded to the Red Lake and Pembina Bands by the Commission. In large part the act tracked the language used by the Commission in its 1958 Order awarding compensation to the Red Lake Band and descendants of the Pembina Band. See Red Lake, Pembina, & White Earth Bands, 6 Ind. Cl. Comm. at 247. It authorized the Secretary of the Interior to prepare a roll of all living lineal

---

[2]The judgment was amended in 1961 to include additional findings of facts. Red Lake, Pembina & White Earth Bands v. United States, 9 Ind. Cl. Comm. 315 (Ind. Cl. Comm. 1961). The Turtle Mountain and Little Shell Bands of Chippewa were treated as constituent parts of the Pembina Band in this litigation. See Red Lake, Pembina & White Earth Bands, 164 Cl. Ct. at 389.

descendants of the Pembina Band as constituted in 1863; to apportion and disseminate funds to the Minnesota Chippewa Tribe, the Turtle Mountain Band of Chippewas of North Dakota, and the Chippewa Cree of Montana, based on the number of those descendants enrolled as tribal members; and to distribute funds in equal shares to those enrolled descendants who were not members of any of the three mentioned tribes. Pub. L. No. 92-59, 85 Stat. 158 (1971).

The descendants of the Pembina Bands, including the Little Shell Bands,[3] also sought compensation from the Commission for the extinguishment of aboriginal title for a tract in excess of eight million acres located in North Dakota. See United States v. Turtle Mountain Band of Chippewa Indians, 612 F.2d 517, 519 (Ct. Cl. 1979); Turtle Mountain Band of Chippewa Indians, Red Lake Band, & Peter Graves v. United States, 43 Ind. Cl. Comm. 251 (Ind. Cl. Comm. 1978).

In 1970 the Commission found that the Plains Ojibwe held aboriginal title to these lands at the time of taking. Turtle Mountain Band v. United States, 23 Ind. Cl. Comm. 315 (Ind. Cl. Comm. 1970). The Commission defined the Plains Ojibwe to include the Little Shell Band, noted that the Little Shell Band in the litigation was not the same as the Turtle Mountain Band, and held that the Little Shell Band had standing to pursue its claims. Id. at 319. The Commission also explained that it had "no jurisdiction to determine how an award is to be paid or precisely who can participate in an award" because such decisions were for congressional and administrative determination. Id. at 319.

---

[3] Three groups identifying as Little Shell Bands were involved in this litigation: Little Shell's Band of Pembina Chippewa Indians led by John B. Azure; The Little Shell Band of Chippewa Indians and Joseph H. Dussome; and Blanche Patenaude of the Little Shell Band of Indians and the Chippewa Cree Tribe. See Turtle Mountain Band of Chippewa Indians, 43 Ind. Cl. Comm. at 251.

The Commission awarded $52,527,337.97 to the plaintiff Indian bands, including the Little Shell Bands.[4] Id. The Court of Claims modified the award slightly, id., and the United States Treasury, pursuant to a certificate of settlement issued by the Court of Claims, transferred the money to the Secretary of Interior on March 25, 1980. Use and Distribution of Pembina Chippewa Indian Judgment Funds: Hearing on S. 1735 Before the Senate Select Comm. on Indian Affairs, 97th Cong. 1 (1982) (statement of Senator Mark Andrews, Acting Chairman, Senate Select Comm. on Indian Affairs).

Under the Distribution of Judgments Act, 25 U.S.C. § 1402(a), the Secretary of the Interior, through the Bureau of Indian Affairs (BIA), prepared and submitted to Congress a plan for the use and distribution of these funds. Use and Distribution of Pembina Chippewa Indian Judgment Funds: Hearing on S. 1735 Before the Senate Select Comm. on Indian Affairs, 97th Cong. 12-13 (1982) (statement of John W. Fritz, Deputy Asst. Sec'y for Indian Affairs, Operations, Dep't of Interior). The BIA recommended that the money be distributed to

> the Turtle Mountain Band of Chippewa Indians of North Dakota, in terms of the total tribal membership; the Chippewa Cree Tribe of Rocky Boy's Reservation of Montana, in terms of the number of members of Pembina ancestry, the overwhelming majority; the Minnesota Chippewa Tribe, in terms of the number of Pembinas affiliated with White Earth Reservation, a small minority; and the Pembina descendants of at least

---

[4]Early in the litigation before the Indian Claims Commission, the Turtle Mountain Band of Chippewa sought to be designated the sole representative of the Pembina Bands to the exclusion of the Little Shell Bands. The Court of Claims rejected its claim, holding that the Little Shell Bands were separate entities that could not be represented by the Turtle Mountain Band. Turtle Mountain Band of Chippewa Indians v. United States, 490 F.2d 935 (Ct. Cl. 1974). In this decision, the court noted that the Little Shell were also known as the Chippewa Cree Tribe. Id. at 939 n.3.

one-quarter Pembina blood who are not members of the three organized
successor tribes.

<u>Id.</u>

The BIA rejected claims for a share in the award made by the Little Shell
Bands, explaining that "[t]he appellation Little Shell is of no value in establishing
Pembina ancestry." <u>Id.</u> Congress accepted the BIA's recommendations in 1982 by
passing Public Law 97-403, which disseminated the appropriated and apportioned
funds to the Turtle Mountain Band of Chippewa Indians of North Dakota, the
Chippewa Cree Tribe of Rocky Boy's Reservation of Montana, the Minnesota
Chippewa Tribe, and Pembina descendants who were not members of those three
tribes.

Ronald Delorme received funds from the BIA under the two distribution acts
which he seeks to challenge in this action.[5] None of the Little Shell Bands appear to
have ever received a tribal payment, however, unlike the Turtle Mountain Band,
Chippewa Cree Tribe, and the Minnesota Chippewa Tribe.[6]

_____

[5]It is not clear whether Delorme received the funds as a member of the Turtle
Mountain Band, to which he may have belonged, or as a Pembina descendant.

[6]At least two groups currently claim to be Little Shell Bands descended from
the Pembina led by Chief Little Shell in the late nineteenth century. The Little Shell
Band of Chippewa Indians of North Dakota (also known as the Little Shell Pembina
Band of North America) is a federally unrecognized band located in North Dakota.
It is seeking federal recognition through the BIA, and it is on behalf of this band that
Ronald Delorme has filed his action. It is not clear, however, how this group relates
to the Little Shell Bands involved in the 1978 Indian Claims Commission litigation.
The Little Shell Tribe of Chippewa Indians of Montana, located in Great Falls,
Montana, descends from a part of the Pembina Band led by Chief Little Shell which
moved to that area at the end of the nineteenth century. The Montana Tribe appears
to be the successor in interest to the Little Shell Band of Chippewa Indians
represented by Joseph H. Dussome in the 1970s Indian Claims Commission litigation,

On December 20, 2001, Ronald Delorme, on behalf of the Little Shell Band of Indians, brought this action in federal district court to challenge the two congressional acts authorizing distribution of funds allocated to satisfy the land claims judgments. Delorme alleges in this lawsuit that members of the band are lineal descendants of Chief Little Shell, who led the Pembina Band in 1863, and that they have never received payment under either Public Law 92-59 or Public Law 97-403. He seeks an accounting of the funds allocated and distributed under the acts.

More specifically, Delorme alleges four causes of action. First, he asks for an accounting of the funds distributed under Public Law 97-403. He claims that the funds are due and owing to the Little Shell Band as a separate entity recognized by the Court of Claims judgment and that the United States has violated its trust responsibility by withholding payment. Second, Delorme requests an accounting of the funds distributed under Public Law 92-59. He claims that the lineal descendants of Chief Little Shell did not receive any of the money and asks for "a fully documented accounting of all such funds and accrued interest and for delivery of all such funds to the Court for such order for safekeeping and distribution as the Court deems equitable and just." The third cause of action is for the accounting of a bond that Chief Little Shell allegedly purchased from the United States on July 16, 1859. Finally, Delorme seeks constitutional review of the statutes, rules, regulations and plans relating to these distributions.

The United States sought dismissal of Delorme's claims based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The district court dismissed the action on the basis that the United States had not waived sovereign immunity and that the suit was

---

and its members appear to have participated as individuals in the earlier litigation as well. Presently the Band is seeking federal recognition through the BIA, and it is not involved in the case before the court.

barred by the statute of limitations. The district court also suggested that the plaintiff lacked standing, questioning whether he had suffered an actual injury in need of redress, but it did not fully address the standing issues or the alleged failure to state a claim. Delorme appeals.

A party invoking federal jurisdiction must establish that he has met the requirements of both constitutional and prudential standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). The burden to show standing is not a mere pleading requirement, "but rather an indispensable part of the plaintiff's case." Id. Each and every element of the standing requirements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id. Strict compliance with this jurisdictional standing requirement is mandated. Johnson v. Missouri, 142 F.3d 1087, 1088 (8th Cir. 1998) (internal citation omitted).

Constitutional standing has three requirements. Lujan, 504 U.S. at 560-61. First, a plaintiff must demonstrate that he has suffered an injury in fact which is actual, concrete, and particularized. Id. Second, the plaintiff must show a causal connection between the conduct complained of and the injury. Id. Third, the plaintiff must establish that the injury will be redressed by a favorable decision. Id.

Delorme claims that the issue of standing is not before this court because the district court did not dismiss on that basis. As a jurisdictional requirement, however, standing can be raised by the court sua sponte at any time during the litigation. See Fed. R. Civ. P. 12(h)(3). Delorme argues that he has met all the requirements for standing with his own affidavit and because he represents the same entity that pursued litigation before the Indian Claims Commission. The United States claims that Delorme lacks standing to bring this suit because he received individual payments under Public Laws 92-59 and 97-403 and because his affidavit does not

address either prudential or constitutional standing but only recounts his personal history.[7]

"General factual allegations of injury resulting from a defendant's conduct may suffice" at the pleadings stage to meet the injury in fact requirement for constitutional standing. Lujan, 504 U.S. at 561 (internal citation omitted). While "on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim,'" id., it is not at all clear in this case who suffered an injury, what the injury is, or who caused the injury alleged by Delorme.

Delorme contends that he has standing because the Little Shell Band had standing and successfully pursued litigation before the Indian Claims Commission. Delorme mistakenly believes that standing in federal court mirrors standing before the Commission, which was governed by the Indian Claims Commission Act (ICCA). See 25 U.S.C. § 70a. Section 10 of the ICCA provided that "any claim within the provisions of this Act may be presented to the Commission by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members." Id. There is no similar statute conferring statutory standing in this

_____

[7]The United States also argues that Delorme lacks standing because he has only offered his own affidavit to show that he represents the Little Shell Band of North Dakota. It relies on factually distinguishable cases brought by individual tribal members on their own personal behalf, rather than as representatives of the tribal council of an unrecognized tribe. See Cobell v. Norton, 240 F.3d 1081, 1086 (D.C. Cir. 2001) (permitting class action suit brought by individual members of several different tribes, who were beneficiaries of Individual Indian Money trust accounts); James v. United States Dep't of Health & Human Serv., 824 F.2d 1132 (D.C. Cir. 1987) (dismissing action brought by dissenting faction of unrecognized tribe for failure to exhaust administrative remedies without reaching the issue of standing); Weeks v. United States, 406 F. Supp. 1309, 1316 n.3 (W.D. Okla. 1975) (allowing class action suit brought on behalf of individual Kansas Delawares who voluntarily relinquished their tribal membership and were not claiming status as a tribe).

case. Delorme must therefore meet the requirements for constitutional and prudential standing established by the Supreme Court in <u>Lujan</u>.

Delorme's pleadings and affidavit do not state the nature of any actual injury suffered. Although the complaint describes the plaintiff as representing "the descendants of a Band of Indians called the Little Shell," Delorme has produced no evidence that the band he represents is one of the same parties involved in the litigation before the Commission. While Delorme's affidavit states that his father, the former hereditary chief of the Little Shell Band, met with one of the lawyers involved in litigation before the Commission, he does not identify his connection with any of the three Little Shell groups involved in that litigation. We do not know whether his band even participated in the litigation or should have received a share of the allocated funds. Without showing that he represents one of the Little Shell Bands involved in the Commission litigation, Delorme has not demonstrated that the band he represents suffered an injury in fact.

Further, Delorme has not indicated with any specificity who suffered the alleged injury and whether he claims standing as the representative of a tribal government acting in its own interests, as the tribal government seeking parens patriae standing on behalf of its members, <u>see</u>, <u>e.g.</u>, <u>Standing Rock Sioux Indian Tribe v. Dorgan</u>, 505 F.2d 1135, 1137 (8th Cir. 1974), or as an individual. Delorme, in his pleadings, asserts that he is not bringing the suit on his own behalf but on behalf of the band.[8] He does not, however, allege whether the band or its individual members have suffered from not receiving the funds awarded by the Commission. Because it is not clear from Delorme's pleadings or affidavit who the injured party is, it is difficult to determine whether he alleges an injury to the band as an entity or to its

---

[8]Delorme cannot allege injury in fact on his own behalf because he has already received payments under Public Laws 92-59 and 97-403.

members as individuals. The evidence Delorme has adduced does not demonstrate that he, the band, or members of the band have suffered an injury in fact.

Because Delorme has not shown an injury in fact, we need not discuss the other Lujan standing requirements of causation or redressability. Nevertheless, we doubt that Delorme has met his burden for causation or redressability. His ability to show causation is undermined by his failure to explain who caused the injury. In his pleadings, he does not specify which branch of the United States government is responsible for the wrongdoing or how its actions caused the alleged injury. Nor does Delorme state how the harm can be adequately redressed by the government. If Delorme is trying to challenge a decision by Congress not to allocate or distribute to the Little Shell Band any of the funds awarded by the Indian Claims Commission, then he is trying to challenge a legislative determination which is nonjusticiable in a court of law. See Baker v. Carr, 369 U.S. 186, 210-211 (1962).

Since Delorme has not shown constitutional standing, we affirm the dismissal of this action.

_____