Whaley, Judge,
delivered the opinion of the court:
This is a case brought by the Cherokee Nation to recover from the United States monies paid to certain Cherokee freedmen appearing on the roll made by the Secretary of the Interior under a decree of this court in the Whitmire case, 30 C. Cls. 138, 180, and who did not appear upon the roll of the Dawes Commission, which was ordered by Congress to make a roll of the freedmen of the Cherokee Nation. It is alleged by the plaintiff that 1,659 persons received payment from certain funds of the Cherokee Nation held by the *92 Government as trustee under the decree of this court, above referred to, who should not have received payment because they were not enrolled later by the Dawes Commission as freedmen, and the trustee, having made payment to the wrong persons, is responsible to the Cherokee Nation for the amount so paid. There are other contentions made by the plaintiff for increased interest rate on the funds so allegedly diverted and for expenses allowed and paid in the making of the roll under the decree of the court. It may be stated here that there are no allegations in the petition covering the expense of making the roll and therefore no recovery for it could in any event be had. The plaintiff claims interest on whatever amount may be decreed at the rate of five per cent instead of four per cent. All these issues are subordinate and conditional on the main issue being decided in plaintiff’s favor. The principal and controlling question therefore to be considered is whether the enrollment by the Secretary of the Interior made under the decree of this court entered February 3, 1896, as of May 8, 1895, is a valid legal roll for the purposes of carrying out the decree of the court. The contention of the plaintiff is that the decree of this court was limited to the sole question of the consideration of the treaty of 1866 as to whether the freedmen were entitled to participate in the fund created by the purchase by the Government of what is known as the Cherokee Outlet. No attack is made, and no attack can be made, on the decision of this court under the jurisdictional act of 1890, 26 Stat. 636, c. 1249, referring to this court the question as to the right of the freedmen to participate per capita under the disbursement of this fund on the same footing as the Cherokees by blood. The sole contention is that the jurisdictional act conferred on this court solely the right to determine whether or not the Cherokee freedmen, as a class, were entitled to participate in the fund, and, having determined this question, the power of the court was exhausted and it could not provide, and Congress had not given it the power to provide, the distribution of this fund without further legislation.
In order to solve this question, it is necessary to go back into the history of this legislation to ascertain what Con *93 gress actually authorized in the statutes it enacted. In the act of October 1, 1890, the Congress referred to this court to hear and determine
what are the just rights in law or in equity * * * of the Cherokee freedmen, who are settled and located in the Cherokee Nation under the provisions and stipulations of article nine of the aforesaid treaty of eighteen hundred and sixty-six in respect to the subject-matter herein provided for.
Section 2 provided that a suit was to determine the rights of the Shawnees, Delawares, or freedmen to the proceeds of the Cherokee lands. Section 3 provided that a suit should be brought to determine the rights of the freedmen by a person, as trustee, selected by them with the approval of the Secretary of the Interior and the last paragraph provided that—
* * * the court is hereby authorized to decree the amount of compensation of such attorneys and counsel fees, not to exceed ten per centum of the amount recovered, and order the same to be paid to the attorneys and counsel of the said Shawnees, Delawares, and freedmen; and all judgments for any sum or sums of money which may be ordered or decreed by such court in favor of the Shawnees, Delawares, or freedmen, and against the Cherokee Nation, shall he enforced by the said court or courts against the said Gherohee Nation by execution, mandamus, or in any other way which the said court may see fit. [Italics ours.]
It is quite apparent that Congress intended by this jurisdictional act that the court should have power to make a distribution to the freedmen of their several shares in any manner in which the court “may see fit.” The fund was held by the United States, so no execution was necessary to enforce the collection of the judgment. The enforcement of the judgment meant the payment to the freedmen of their individual shares, and before that could be done it was necessary to ascertain who were the distributees.
Under this jurisdictional act the Whitmire case, supra, was brought and in an elaborate opinion of this court it was held that the freedmen were to share equally with the *94 Cherokees by blood in the amount of this fund. Upon exceptions by both parties to the suit, the decree of this court in 1895 was revoked and cancelled and in 1896 a consent decree in which the Cherokee Nation joined was entered nunc pro tuno. It must be borne in mind that the case now before this court is a case of the Cherokee Nation seeking to recover from the Government of the United States certain funds which it alleges were improperly paid by the Government to persons who were not legally entitled to receive payment and which, therefore, the Cherokee Nation is entitled to recover because of misapplication of the funds by the trustee.
In the decree entered by this court in 1896 the Secretary of the Interior, who had charge of the Indian Affairs, was directed to make a roll of freedmen entitled to participate in the distribution of this fund. In carrying out the decree, the Secretary of the Interior appointed a commission of three persons, one named by the Secretary, one named by. the defendant, and one named by the Cherokee Nation. This commission held hearings, took testimony, and made a roll of the freedmen, which was subsequently revised and approved by the Secretary of the Interior, and those appearing on this roll participated in the fund so paid out by the Secretary of the Interior from the monies held by him in trust.
The present suit is in the nature of a suit in equity to recover from the trustee funds which have been wrongfully disbursed. A party coming into a court of equity must come in with clean hands. Not only did the Cherokee Nation join in the consent decree entered by the court and name a representative on the commission to make the enrollment and have an attorney representing it in the proceedings before the commission, but also formally passed an act appropriating out of its own funds an additional sum of $400,000 for the freedmen, per capita;, found entitled to participate and enrolled under the judgment. However, the plaintiff contends that the court exceeded its authority in having the roll made and the fund distributed, and when it did so, it was coram non judice.
*95 The roll made by the Secretary of the Interior is commonly referred to as the Kern-Clifton roll. In order to sustain its position, the plaintiff sets up, as against the Kern-Clifton roll, the roll of the Dawes commission which was made some ten years subsequently under different acts of Congress calling for different methods or bases of enrollment, and for a specific and distinctly different purpose, and which roll contains 1,659 less freedmen than named on the roll made under the court’s decree.
It is necessary now for us to ascertain how the Dawes Commission roll was made. In 1893 Congress provided for this commission, empowering it to negotiate with the Five Civilized Tribes for the purpose of extinguishment of tribal property and the division of the same among the members of the tribes (27 Stat. 645, sec. 16). On June 10, 1896, Congress passed another act, 29 Stat. 321, c. 398, providing that the commission make a roll of the citizens of the tribes, which included the Cherokees; and by act of July 1902 (32 Stat. 716, 720), directed the roll to be made as of September 1, 1902, and to include only freedmen living on that date. This commission proceeded to perform its work and did not complete the rolls until March 4, 1907. This act of 1896 contained no reference to the decree of the court ordering enrollment of the freedmen for the purpose of distribution of the fund in which the court found these freedmen had the right to participate. Between the passage of the act of June 10, 1896, and the completion of the rolls by the Dawes commission on March 4, 1907, Congress passed several other acts relating to the method of enrollment to be made by the Dawes commission. In the act of June 28, 1898, commonly known as the Curtis act, it was provided that the commission “shall make a roll of the Cherokee freedmen in strict compliance with the decree of the Court of Claims rendered the third day of February 1896.” By the act of July 1, 1902, 32 Stat. 716, 720, paragraph 27, Congress again provided that the enrollment of the freedmen must be made in strict conformity with the decree of the Court of Claims. Although the decree of the Court of Claims provided that in making the enrollment those freedmen or their descend *96 ants living on May 3, 1894, should be the ones entitled to participate in the fund, on April 26, 1906, Congress passed an act, 34 Stat. 137, which in section 3 thereof provided explicitly that—
The roll of Cherokee freedmen shall include only such persons of African descent, either free colored or the slaves of Cherokee citizens and their descendants, who were actual personal bona fide residents of the Cherokee Nation August eleventh, eighteen hundred and sixty-six, or who actually returned and established such residence in the Cherokee Nation on or before February eleventh, eighteen hundred and sixty-seven.
All of these acts of the Congress in reference to the powers and duties of the Dawes Commission were for the specific purpose of extinguishment of tribal property and the division of that property among those citizens of the tribal nation. There is not a single line or word in any of the statutes in reference to the creation of the Dawes Commission and its functions or duties which in any way intimated or showed that Congress intended therein to deal with the distribution of the funds which the Court of Claims had decreed belong to the freedmen, and should be distributed to them per capita, and which had actually been distributed principally in 1897, ten years before the Dawes Commission Eoll was completed, or which in any way indicated an intention to question such distribution under-the court’s decree and the Kern-Clifton roll.
The plaintiff contends that by the creation of the Dawes Commission, and its authorization in 1896, a year before the distribution of the money under the decree of the court in 1897, to enroll the tribes, including freedmen, Congress intended to take from the court the right to ascertain to whom this money should be distributed. If the Congress had intended any such action, it would have been simple enough to have inserted some word or sentence showing that it was the intention of Congress to deprive the court of the right to have an enrollment made. Congress Avas aware that such an enrollment was being made. If there was a repeal of the power given to the court under the act of 1890 by the passage of the act of 1896, it can be only by implication, for which there is no basis whatever *97 in fact or law, and further, implied repeals are not favored by the law. The subsequent action of Congress in both the act of 1898 and 1902, in providing that the Dawes Commission enrollment should be in strict compliance with the decree of the Court of Claims, explicitly shows that Congress never intended the act of 1896 to act as a repeal or to, in any way, amend or take away from the court the right to make an enrollment of the freedmen for the purpose of ascertaining who were entitled to participate in the funds. Congress had the right to deal further as it sawT fit with the subject matter and pass any acts it desired in reference to the Indian Tribes. This it did in the acts which were passed after the distribution of the fund under the decree. See Stephens v. Cherokee Nation, 174 U. S. 145, and Wallace v. Adams, 204 U. S. 415. What Congress was dealing with, when the legislation was passed, was the allotment of land. It had nothing to do with the distribution of prior funds among the citizens of the Cherokee Nation. This had been provided for in the act referring these claims to the Court of Claims and the decree of that court carrying out its judgment. Cherokee Nation v. Journeycake, 155 U. S. 196, and Cherokee Nation v. Blackfeather, 155 U. S. 218. The numerous acts of Congress were passed in aid of the purpose of Congress to extinguish the tribal titles to Indian lands and by allotments to the members of the tribes to make them citizens of the state or states to be created embracing these lands. Garfield v. Goldsby, 211 U. S. 249.
The plaintiff relies on the cases of the Cherokee Nation v. Whitmire, 223 U. S. 108, 117, and Lowe v. Fisher, 223 U. S. 95. Both of these cases arose under the enrollment made by the Dawes Commission and involve a right to an allotment of land. In the Lowe v. Fisher case, supra, certificates of allotment had been issued to enrolled freedmen and the Secretary, after giving due notice, and a hearing having been given, struck the names from the rolls. In this case the court goes into a careful analysis of a LI of the acts in reference to the enrollment of the Indians under the Kern-Clifton roll and also the Dawes Commission roll and holds that the Secretary had the power to correct the rolls and to strike therefrom any name which *98 may have been placed thereon through fraud or mistake. But we fail to find in this case any support for plaintiff’s contentions in the case at bar.
The case of the Cherokee, Nation v. Whitmire, supra, was an appeal from the Court of Claims, 46 C. Cls. 227, which had held that the name of a person appearing on the Kern-Clifton roll entitled him and his descendants to be placed on the final roll of the citizens of the Cherokee Nation for allotment of lands though they did not appear on the Dawes Commission roll. The Supreme Court goes into an extended review of the case of the freedmen and holds that the Kern-Clifton roll was not considered by Congress as the final roll of the freedmen who should be entitled to allotments of land under the rules and regulations laid down by Congress from time to time by its several acts for those who should be placed on the Dawes roll. Plaintiff’s whole contention is that in this case the court held that the Kern-Clifton roll was administrative and therefore all disbursements by the Government under it were wrongfully made. The court, speaking of the attitude of Congress in regard to the rolls, said: •
It did not accept the Kern-Clifton roll as an authentic identification of the individual freedmen. It had been challenged. It had been made up with haste and under circumstances which caused question of its correctness. It had not received judicial approval. From the first to the last it was the act of administrative officers. Had it been reported to the court and its integrity established by the judgment of the court, Congress might, indeed, have hesitated to ignore it. As an act of merely administrative officers it had no such sanction. It must be borne in mind that important rights were involved and no good reason could be urged against or serious consequences apprehended from another investigation. Those who were entitled to be enrolled could again establish their right. [Italics ours.]
It is under this language of the above case that the plaintiff places its chief reliance in maintaining that the Kern-Clifton roll was an invalid roll and that the court had no poAver to make it.
In Lowe v. Fisher and in Cherokee Nation v. Whitmire, supra, the Supreme Court was dealing with the enrollment *99 of Cherokee citizens, including freedmen, by the Dawes Commission created by the act of March 3, 1893, § 16, 27 Stat. 645, and the amendatory acts passed by Congress thereafter until the act of April 26, 1906, 34 Stat. 137, c. 1876, in which act the time for the closing of the rolls was provided. As we have pointed out before, in two of these acts it is expressly provided that as to freedmen strict compliance with the decree of the Court of Claims was enjoined. Act of July 1, 1902, 32 Stat. 716, 720, and § 27. Act of April 26, 1906, 34 Stat. 137.
From the passage of the jurisdictional act (Oct. 1890) conferring upon the Court of Claims adjudication of the rights of the freedmen under the provisions of the treaty of 1866 in the fund occasioned by the purchase of the “Outlet” and the power given the Court to enforce its judgment, Congress has passed no act, or any amendment to any act in any way or manner controlling or directing the court from making payment to the individual freedmen in the manner provided for in its decree. y
During the period from 1890 to 1897 when much Indian legislation was passing through Congressional channels, Congress did not deem it advisable to direct the court in what manner the rolls should be made, or settle the qualifications of those who should be enrolled. It was left to the court to enforce its decree. Congress did deem it advisable to; say to the Dawes Commission that only those freedmen “who were actual personal bona -fide residents of the Cherokee Nation, August eleventh, eighteen hundred sixty-six, or who actually returned and established such residence in the Cherokee Nation on or before February eleventh, eighteen hundred sixty-six”, should be enrolled. By this act Congress clearly defined who should be classified and enrolled as freedmen for the purpose of citizenship and allotment of land out of the tribal property.
We can find nothing in the language of the court which shows that the Supreme Court intended to say that the decree of this court carrying out its judgment was not binding and effective for the purposes for which it was made. The court was dealing with an entirely different subject matter and the decree was in strict compliance with the act of October 1, 1890, which gave the court the right to enforce *100 its judgment in any manner it might see fit. What the court meant by this language was that the mere fact that a freedman appeared on the Kern-Clifton roll did not necessarily, and ipso facto, entitle him to any allotment of lands when he was not enrolled on the Dawes roll as provided by statutes which were originally passed in order to carry out the division of the tribal property. There is no intimation in this opinion that the decree of the Court of Claims is not a valid and binding decree so far as it affects the subject matter which was referred to the Court of Claims under the Jurisdictional Act in the Whitmire case and which provided only for the payment of money to those who were entitled to it under the judgment of the court. Under the act, the method of ascertaining who were the proper parties to receive it, after the court had decreed that the freedmen were entitled to participate, was left entirely to the discretion of the court. What the Supreme Court was referring to, and what it intended to convey, was that Congress had the right 'to provide a different method and a different standard in the allotment of lands belonging to the Cherokee Nation and have a different enrollment of those who should be entitled to these allotments other than that provided for under the decree of the Court of Claims. The Kern-Clifton roll was good and valid for the purpose for which it was made and was in nowise affected by the subsequent enrollment by the Dawes Commission made in the manner provided by Congress.
The decision of this question adversely to the interests of the plaintiff disposes of all of the other issues in the case. The petition must be dismissed. It is so ordered.
WiluiaMS, Judge; LittletoN, Judge; Green, Judge; and Booth, Chief Justice, concur.
MEMORANDUM ON PLAINTIFF’S MOTION FOR A NEW TRIAL
Per Curiam :
This is a motion by plaintiff for a new trial, alleging fourteen errors committed in law and fact. After a careful consideration we find that all of them should be overruled with the exception of a slight change in finding number 14, in the second paragraph thereof, where the word “recog- *101 should be stricken out and the following words inserted in lieu thereof: “further-approved the making of,” so that the sentence shall read as follows:
Also, by an Act of March 27, 1896, the Cherokee National Council further approved the making of the said Kern-Clifton roll of freedmen by appropriating out of a portion of the first installment of the Cherokee Outlet proceeds remaining in the United States Treasury the sum of $400,000, in addition to the $903,365 provided by the said court decree, for payment to such freedmen on said roll a total per capita of not exceeding $295.35, instead of the $256.34 provided for by said decree.
With this correction, the opinion of the court, on page 18, lines 26 and 27, should be corrected by striking out the words “but after the enrollment had been approved by the Secretary of the Interior, the Cherokee Nation” and inserting in the place thereof the following: “and have an attorney representing it in the proceedings before the commission, but also,” so that this sentence shall read as follows:
Not only did the Cherokee Nation join in the consent decree entered by the court and name a representative on the commission to make the enrollment and have an attorney representing it in the proceedings before the commission, but also formally passed an act appropriating out of its own funds an additional sum of $400,000 for the freedmen, per capita, found entitled to participate and enrolled under the judgment.
The corrections above stated will be made but, as they are immaterial to the decision of the case, the motion for a new trial is overruled. It is so ordered.