Per Curiam :
This is an appeal from a decision of the Indian Claims Commission dismissing appellants’ claims on the ground that they were individual (rather than group) claims, over which the Commission has no jurisdiction. 10 Ind. Cl. Comm. 109 (Docket No. 123). Admittedly, if the claims are individual the Commission lacks authority to entertain them under the Indian Claims Commission Act which grants jurisdiction only to hear “claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians.” See 25 U.S.C. 70a; Minnesota Chippewa Tribe v. United States, ante, pp. 258, 270-71, 315 F. 2d 906, 913-14.
The main theme of the petition instituting the suit was that those Cherokee Freedmen whom appellants represent were injured by the refusal of the Dawes Commission to enroll them as members of the Cherokee Nation under the legislation authorizing and directing that tribunal to hear and determine such applications for enrollment. See *789 Cherokee Nation and United States v. Whitmire, 223 U.S. 108 (1912); United States, ex rel. Lowe v. Fisher, 223 U.S. 95 (1912); Woodward v. De Graffenried, 238 U.S. 284, 295 ff. (1915). As a result of their exclusion from the Dawes Commission roll, these Freedmen received no allotments of Cherokee land which was then being divided. Belief is now sought because, it is alleged, the Dawes Commission erred in rejecting these applications for enrollment.
After inquiring into the nature of the claims presented by appellants, the Indian Claims Commission concluded that they were all individual claims dependent upon the individual facts and circumstances pertinent to the particular person asserting that he (or his ancestor) was wrongfully denied enrollment. About ninety percent of the Cherokee Freedmen rejected by the Dawes Commission were found wanting because it was determined that they had not timely returned to Cherokee Territory within the six-month limit set by Article IX of the Treaty of 1866, between the United States and the Cherokees, 14 Stat. 799, 801 (which provided generally that the Cherokee Freedmen, as defined, were to “have all the rights of native Cherokees”). The other rejected applicants were turned down for similar personal reasons. We agree with the Indian Claims Commission that claims of this type are individual and not group claims. Their resolution would depend upon individual proof as to each Freedman that he was qualified, under the general standards laid down in the 1866 Treaty, to be enrolled as a Cherokee. There is no common right or group interest. Since the claims are individual, they could be prosecuted singly, in a proper forum, without involving other Freedmen or any entity; combining them into one proceeding does not transform such individual claims into group claims cognizable by the Claims Commission, or change their basic individual character.
Moreover, to the extent that these claims (founded on the actions of the Dawes Commission) could be viewed as belonging to a group or entity, they would be barred, on the principle of res judicata, by the ruling of the Supreme Court in Cherokee Nation and United States v. Whitmire, supra, 223 U.S. 108 (1912), that the Dawes Commission was not *790 bound by any prior roll but bad full quasi-judicial authority to determine anew those members of the Cherokee Nation (including Freedmen) who were entitled to allotments. See also United States v. Atkins, 260 U.S. 220 (1922). This court has held that the Indian Claims Commission Act does not sanction relitigation of matters already determined by the courts. The Western (Old Settler) Cherokee Indians v. United States, 116 Ct. Cl. 665, 676-78, 89 F. Supp. 1006, 1011-1013 (1950), cert. denied, 340 U.S. 904 (1950); The Choctaw Nation v. United States, 128 Ct. Cl. 195, 200-202, 121 F. Supp. 206, 210-212 (1954); The Choctaw Nation v. United States, 133 Ct. Cl. 207, 135 F. Supp. 536 (1955), cert. denied, 352 U.S. 825 (1956).
Accordingly, we affirm the decision of the Indian Claims Commission insofar as it dismissed appellants’ petition that relief be granted on account of the failure of the Dawes Commission to enroll those Cherokee Freedmen whom appellants represent.
However, appellants also press upon us another contention which is claimed to be adequate to keep them in court.[1] They say that, as a matter of law, the Cherokee Freedmen rejected by the Dawes Commission constitute a class still entitled to participate in funds or properties of the Cherokee Nation other than those relating to the land allotments with which the Dawes Commission was concerned. The line of their argument is as follows: (a) Prior to the Dawes Commission’s enrollment work there were earlier rolls of the Cherokees on which appellants’ Freedmen admittedly appeared, particularly the Kern-Clifton roll; (b) this Kern-Clifton roll was drawn up as a result of litigation in which this court held the Cherokee Freedmen, as a class, entitled to participate on an equal basis with the blood Cherokees in the funds and properties of the Nation (Whitmire v. Cherokee Nation and United States, 30 Ct. Cl. 138, 180 (1895), see 223 U.S. 108, 114-115); (c) appellants’ Freedmen received benefits from being on the Kern-Clifton roll, including participation in the monies paid for the so-called Cherokee *791 “strip” or “outlet” sold by the Cherokee Nation in 1893; (d) the Dawes Commission subsequently struck their names from the Cherokee rolls for the purposes of land allotments, but this court has said that nevertheless “the Kern-Clifton roll was good and valid for the purpose for which it was made and was in nowise affected by the subsequent enrollment by the Dawes Commission made in the manner provided by Congress” for allotment purposes (Cherokee Nation v. United States, 85 Ct. Cl. 76, 100 (1937)); (e) it follows, appellants argue, that the Freedmen who were on the Kern-Clifton roll but were later removed from the Dawes roll remain a group entitled (as a matter of law)[2] to participate in monetary benefits coming to the Cherokee Nation — aside from benefits connected with land allotments; and finally (f) this claim is covered by the petition filed by appellants in the Indian Claims Commission.
Appellants emphasize that this claim to other funds, if valid, has a special significance at the present time. The Indian Claims Commission has approved a stipulation awarding the Cherokee Nation over $14,000,000 additional compensation for the sale of the Cherokee “strip”. The Cherokee Nation v. United States, 9 Ind. Cl. Comm. 435 (Docket No. 173) (1961). Appellants say that their Freedmen are automatically entitled to participate in this award, just as they did in the original distribution of the funds received in the 1890’s on account of the “strip”. Appellants also claim participation in other outstanding Cherokee funds.
We do not pass at the present stage upon the validity of this argument but remand the case to the Indian Claims Commission (which has not yet dealt with the contention) so that it may consider this new aspect. If the Commission finds that this part of the claim is available and has merit, it should make an appropriate disposition. It might, for instance, wish to permit the appellants to intervene in its Docket No. 173 or it might consolidate the present case with No. 173. We leave the course of the further proceedings to *792 tb.e Commission. The interested parties can seek review, at the proper stage, from the Commission’s disposition of this claim.

Affirmed m fart; remanded in fart for further frooeedings.

 It is not clear whether or not this contention was explicitly urged before the Indian Claims Commission.

 Tie argument is that no proof of individual facts would be necessary. All persons on the Kern-Clifton roll would, without more, be entitled to participate. All of the Freedmen represented by appellants appeared on the Kern-Clifton roll (or their ancestors did).