Davis, Judge,
delivered the opinion of the court:
Article IX of the Treaty of July 19,1866,14 Stat. 199,801, between the Federal Government and the Cherokee Nation provided that all former Negro slaves of the Cherokees, liberated by the Cherokee Nation during the Civil War, “as well as all free colored persons who were in the country at the commencement of the rebellion, and are now residents therein, or who may return within- six months, and their descendants, shall have all the rights of native Cherokees.” In the same year, these individuals, commonly called Cherokee Freedmen, were “taken and deemed to be citizens of the Cherokee Nation” by the Nation’s constitution. See Cherokee Nation v. United States, 180 Ct. Cl. 181 (1967), affirming 12 Ind. Cl. Comm. 570 (1963). Appellants represent a portion of such Freedmen—those who (or whose ancestors) were listed on two rolls of Cherokee Indians prepared before 1900 (the Wallace and Kern-Clifton rolls) but who were not included in the roll drawn up in the first decade of this century by the Dawes Commission under legislation authorizing and directing that tribunal to hear and determine applications for enrollment in the Nation. See United States ex rel. Lowe v. Fisher, 223 U.S. 95 (1912); Cherokee Nation and United States v. Whitmire, 223 U.S. 108 (1912); Woodward v. De Graffenried, 238 U.S. 284, 295 ff. (1915); Cherokee Nation v. United States, 85 Ct. Cl. 76 (1937).
For some years appellants have been seeking to establish a claim against the United States under the Indian Claims Commission Act, 25 U.S.C. § 70a (1964). Their petition before the Commission was filed as Docket No. 123. In *42 Cherokee Freedmen v. United States, 161 Ct. Cl. 787 (1963), we affirmed the Commission in rejecting tlieir main claim in Docket No. 123 that the Cherokee Freedmen whom they represent could recover under the Act for the Dawes Commission’s refusal to enroll them or their ancestors. Our holding was double: first, that these were not group claims but individual demands outside the scope of the Act, and second, “to the extent that these claims (founded on the actions of the Dawes Commission) could be viewed as belonging to a group or entity, they would be barred, on the principle of res judicata, by the ruling of the Supreme Court in herokee Nation and United States v. Whitmire, supra, 223 U.S. 108 (1912).” 161 Ct. Cl. at 789.
In that same opinion, however, we also discussed another, and new, contention raised by appellants — “that, as a matter of law, the Cherokee Freedmen rejected by the Dawes Commission constitute a class still entitled to participate in funds or properties of the Cherokee Nation other than those relating to the land allotments with which the Dawes Commission was concerned.” 161 Ct. Cl. at 790. We spelled out the appellants’ line of argument,[1] which had never been considered *43 by the Indian Claims Commission, but refused to “pass at the present stage upon the validity of this argument.” Instead, we remanded to the Commission “so that it may consider this new aspect. If the Commission finds that this part of the claim is available and has merit, it should make an appropriate disposition.” 161 Ct. Cl. at 791.
A major interest of the appellants in putting forth this new contention was to place themselves in a position to participate in the award the Commission had made in 1961 to the Cherokee Nation of over $14,000,000 additional compensation for the sale to the United States in the latter part of the 19th century of Cherokee lands. See The Cherokee Nation v. United, States, 9 Ind. Cl. Comm. 162, 435 (Docket No. 173) (1961). But this award had already been paid by Congress in 1962 under a formula adopting the Dawes roll of 1907 which excluded appellants. Act of Oct. 9,1962, 76 Stat. 776. Accordingly, on remand after our 1963 ruling, the Commission denied appellants’ motion for leave to intervene in Docket No. 173. That decision is not contested on this appeal.
The Cherokee Nation had another, smaller claim, under the Act, against the United States, numbered as Docket No. 173-A. This demand also related to Cherokee lands acquired by the Federal Government before 1900. Appellants’ motion to intervene in that proceeding was granted by the Commission in 1964, and they then raised in that docket the issues mentioned in our 1963 opinion, supra (see note 1). To vindicate their right to participate in any recovery by the Cherokees in Docket No. 173-A (as well as in the already-paid award in Docket No. 173), the Freedmen moved in 1969 for summary judgment against the United States (in both Docket Nos. 123 and 173-A) .of 5.65% of all sums awarded and to be awarded the Cherokees in Docket Nos. 173 and 173-A, plus interest.[2]
*44 In tbe ruling now before ns, tbe Commission denied tbis motion in its entirety on tbe ground that tbe Commission bas no power to decide bow an award is to be paid and wbo can participate in it. 22 Ind. Cl. Comm. 417 (1970). At tbe same time, tbe Commission gave tbe Cberokees a judgment of over $4,000,000 in Docket No. 173-A (subject to offsets and counterclaims). Id. The substantive correctness of that award, or of the amount, is not challenged here by any party.
On this appeal by tbe Cherokee Freedmen from tbe refusal to them of summary judgment, we affirm, but consider it appropriate to expand somewhat more than tbe Commission did on tbe troubling question of what that tribunal or tbis court may do with respect to designating the party or body m whose favor an award is made under tbe Indian Claims Commission Act.
First we clear away appellants’ threshold point that our 1963 opinion directed tbe Commission to pass upon tbe merits of tbe argument sketched in footnote 1, supra, and that we also implicitly decided tbe Commission bad jurisdiction to do so. That is an incorrect reading of our ruling. Because the new issue bad surfaced so late in tbe proceeding then before us, and bad not been considered at all by tbe Commission, we refused to pass upon any aspect of tbe matter, either tbe merits of tbe appellants’ arguments or tbe Government’s submission that tbe Commission bad no authority to delve into tbe merits. We left it to tbe Commission to determine in tbe first instance whether tbe claim was “available” at all and, only if so, whether it bad merit. No decision was made here *45 on any jurisdictional question, on the merits, or on the proper form of an award in Docket Nos. 173 and 173-A. Those issues were all left open, and the Commission did not depart from our previous mandate in deciding as it did. We now go into the matter for the first time.
It will be helpful, in discussing whether the Commission was correct, to sift out several distinct but overlapping areas in the law of the Indian Claims Commission Act. Our decisions have treated with a number of different problems, interlaced in practice but separate in theory, concerning the status of groups or entities under various aspects of the legislation. One such subject is the so-called problem of the “identifiable group”. SeotionSof the Act, 25 U.S.C. § 70a (1964),gives the Commission jurisdiction of claims against the United States “on behalf of any Indian tribe, band,- of other identifiable group of American Indians residing within the territorial limits of the United States or Alaska”, and § 10, 25 U.S.C. § 70i (1964), allows a claim to be prosecuted “by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members” (with an exception for groups with a tribal organization). Several opinions deal with the question of whether a named claimant is properly such an “identifiable group” which can pursue the- litigation itself, or on whose behalf it can be carried on by an individual member.[3] That is not a question which is present here. In prior proceedings, the Commission determined that appellants fall within the acceptable class which can pursue claims under the Act (2 Ind. Cl. Comm. 231 (1952); 10 Ind. Cl. Comm. 109 (1961)), and there is neither reason nor occasion to disturb that holding.
Analytically distinct from this matter of the nature of the entity prosecuting the claim — whether or not it is an “identi *46 fiable group”—is the character of the claim being pressed by the group. The Commission has authority only over group demands, not individual claims. 25 U.S.C. § 70a (1964); Minnesota Chippewa Tribe v. United States, 161 Ct. Cl. 258, 271, 315 F. 2d 906, 914 (1963); Absentee Shawnee Tribe v. United States, 165 Ct. Cl. 510, 514-17 (1964). At the earlier stage of appellants’ litigation, the Commission and this court held that, although appellants’ status as an “identifiable group” was not challenged, their main claim (the one originally pursued) was not a group claim but rather a series of individual demands. 161 Ct. Cl. 787, 789 (1963). This, too, is a subject with which we need not now concern ourselves, in the current phase of the proceedings, since we can properly assume, there being no challenge, that the new substantive claim appellants now assert is “group” in character.
A third separate problem in this family of related topics is the composition of the particular entity or group in whose favor an award is made under the Claims Commission Act— whether specific individuals, classes of persons, or subgroups saying that they are members or components of the prevailing group are entitled to participate in the judgment. Those questions we have consistently held, from the beginning of litigation under the Act, to be beyond the competence of the Commission and this court; they are reserved for Congress or for authorized administrative resolution when the award is paid.[4] Congress in its turn, has taken upon itself, when *47 necessary, this function of defining the individuals or classes who are to share in a judgment under the Act. For example, the $14,000,000 award to the Cherokees in Commission Docket No. 173 was expressly directed to be paid per capita to individuals on the Dawes roll, which omitted all persons in appellants’ group. Act of October 9, 1962, 76 Stat. 776.[5]
It is this practice which the Commission correctly followed in its decision below. There is a clear dispute as to the relationship of the segment of Cherokee Freedmen now before us to the Cherokee Nation as a whole. Appellants say that they are properly members of the Nation entitled to participate in the Commission’s award to it, and that their exclusion by the Dawes roll is irrelevant because that list was created for a special purpose unrelated to judgments under the Claims Commission Act. See note 1, supra. Counsel for the appellee Nation (the organized group) reply that the pre-1900 Kern-Clifton roll (which included the names of appellants or their ancestors) was infected by mistake or fraud, that the Dawes Commission was designed to weed out just such errors and to establish a correct roll for the Cherokee Nation for all purposes, and that it fully performed this function; the result, on this view, is that appellants have no right to consider themselves part of the Cherokee Nation since their original appearance on the Nation’s rolls, before the Dawes Commission acted, was simply mistaken and wrong. Just as in Peoria Tribe v. United States, supra, 169 Ct. Cl. 1009, 1011-12 (1965),[6] this is a controversy to be resolved by the legislative and executive branches, not by the Commission or the court. The Commission was right to by-pass it, and so must we.
This principle necessarily disposes of appellants’ summary judgment motion (see note 2, supra). Since their disputed right to participate in the award cannot be determined by the *48 Commission (or by us), and since Congress could, of course, decide against them, they have no present right to a judgment for any fixed sum or for any percentage, nor even a declaration that they are entitled to share in an award. They have not reached that stage.
But there remains another, cognate, concept which appellants can properly invoke for some clarification of the scope and nature of the award. We have always taken pains to assure that any group or person claiming a right to participate (at least colorably) in a judgment under the Act not be totally excluded, either by the form of the award or by the restrictive nature of the entity to which the award goes in name. Since Congress (or its agent) is to settle disputes as to the composition of, or membership in, the group entitled to the money, the Commission’s judgment should not bar an individual or entity from urging before the other branches a right to share on the ground of such membership.
The first decision to reflect this point was McGhee v. United States, supra, 122 Ct. Cl. 380, cert. denied, 344 U.S. 856 (1952). That suit had been brought before the Commission by the “Creek Nation”, which was an entity based in Oklahoma and represented only those Creeks who had crossed the Mississippi River after 1826 to settle in the West. Other Creeks had remained in the East. The land involved in the litigation lay in Alabama and Georgia and had been acquired by the Government in 1814 (allegedly without paying fair compensation) well before the migration of part of the Creeks to Oklahoma. A group of Indians calling itself “The Creek Nation East of the Mississippi” sought to intervene in the proceedings before the Commission on the ground that “the injury which was the basis of the claims asserted [in the main suit] * * * was in fact an injury to the entire Creek Nation as it was 'constituted in 1814, and that the unorganized descendants of members of such nation who remained east of the Mississippi River are as much interested in the subject matter and outcome of the litigation as are the organized descendants of that nation .living in Oklahoma; that * * * The Creek Nation of Oklahoma, whose membership is restricted to Creeks ( and their descendants) who were living in *49 Oklahoma and whose names were placed on the Creek rolls in 1907, is neither identical with nor the full successor to The Creek Nation as it existed in 1814, and that because [the Creek Nation of Oklahoma] improperly claims to be such full successor and the exclusive owner of the claim in question, it thus denies rather than represents the rights of the [Creek Nation East of the Mississippi]”. 122 Ct. Cl. at 382-83. The 'Indian Claims Commission denied intervention, but this court reversed. We held that (a) the wrong, if any, was to the whole Creek Nation as it existed and was constituted in 1814 (122 Ct. Cl. at 387, 388, 390, 396); (b) the Oklahoma Creeks had no more right to sue for this injury than the Eastern Creeks, since both could represent the Creek Nation as a whole (122 Ct. Cl. 387-88); (c) the Creek Nation of Oklahoma did not and would not represent the Eastern Creeks, and therefore could not have the exclusive right to prosecute (122 Ct. Cl. at 386, 387, 388, 390-91, 394-95, 396); and, accordingly, (d) “it would appear to be both proper and necessary that the eastern group be allowed to intervene by their representatives in order that all those who may be legally entitled to share in a possible recovery for the injury to their common ancestors, be before the Commission” (122 Ct. Cl. at 394). To the suggestion that this result exceeded jurisdictional limits by “defining the identity of individuals entitled to share in any award made”, the opinion answered that no such determination was being made but that the petition to intervene raised no more than the separate issue “whether only [The Creek Nation of Oklahoma] and its members are entitled to prosecute the claim arising under the 1814 treaty, or whether the representatives of the entire Creek Nation, as it was constituted in 1814, are the proper parties to prosecute the claim” (122 Ct. Cl. at 395). What the court did, in short, was to decide that the entity entitled to the award would be the Creek Nation as it existed in 1814 (not the original suing group alone), and then to place the Eastern Creeks in a position to urge upon Congress that they (as well as the Western Creeks) were descendants of the Creek Nation as it was constituted in 1814 and entitled to participate in an award to that entity (122 Ct. Cl. at 396). See Minnesota *50 Chippewa Tribe v. United States, supra, 161 Ct. Cl. 258, 271, 315 F.2d 906, 914 (1963).[7]
Since McGhee, the court has several times repeated or recalled this same theme — that the award should be framed so as to cover all interested {i.e. claiming) groups, so as to allow all those entities which are ultimately found entitled to be in a position to participate, and so as to exclude none of these groups or classes. In Peoria Tribe v. United States, supra, 169 Ct. Cl. 1009, 1012 n.2, we pointed out that hi McGhee, as well as in our earlier opinion in this Cherokee Freedmen litigation (161 Ct. Cl. 787), we were concerned with contentions that interested parties were not represented by the suing claimants, while in Peoria “there is no doubt that all possible interested parties are represented by the appellant-petitioners. No such party is necessarily excluded by the form or nature of the award itself.” In Absentee Shawnee Tribe of Oklahoma v. United States, supra, 165 Ct. Cl. 510, 524-25 (1964), we upheld the right of The Absentee Shawnee Tribe to present a claim on behalf of the entire Shawnee Nation, and said that, if recovery was allowed, the entire Nation (not the Absentee Shawnees alone) would participate. Red Lake and Pembina Bands v. United States, 173 Ct. Cl. 928, 943, 355 F. 2d 936, 944 (1965), said that “the form of the award should not predetermine the persons who will benefit from the award to the group”, and cautioned against “circumscription of the award which might cause it to cover persons outside the claiming group or less than all of the claiming *51 group.” The opinion noted, in this connection, that the Indian Claims Commission Act leaves open for Congressional or administrative determination the issue (among others) “whether living persons who were descendants of members of the tribe, band, or identifiable group as it existed at the time of the wrong — but who were not members of or represented by the suing group today — were entitled to participate in the award.” 173 Ct. Cl. at 942.[8]
Application of this principle to the present case requires that appellant Cherokee Freedmen be assured, so far as can be done in these proceedings, of an opportunity to advance before Congress (or its agent) their claim of a right to participate in any final award to be made in Docket No. 173-A.[9] This will be accomplished if three interconnected things are done. The first step has already been taken — as was the case in MeGhee v. United States, sufra (after this court’s order), appellants have already been allowed by the Commission to intervene in Docket No. 173-A, and are therefore formally in the position to urge, when payment of the award comes up, that they are partial beneficiaries of the judgment.[10] Second, since the appellee Cherokee Nation, the named petitioner in Docket No. 173-A, rejects appellants and categorically denies that it represents them, the award (again as in McGhee, supra) should not designate that particular organized entity as the beneficiary or the only beneficiary, *52 for fear that such a form of award could be thought in context to pre-determine the persons who could share. Cf. Peoria Tribe v. United States, supra, 169 Ct. Cl. 1009, 1011 (1965).
The third protective device is to make clear — as we do now and as the Commission should also do in its final decision — the identity of the injured tribal entity. That is well within the authority of court and Commission under the Claims Commission Act (see McGhee, Yuchi, Red Lake and Pembina Bands, and the other decisions cited supra), and it will be that entity whose composition will be decided by Congress or its designee.
The Cherokee lands involved in Docket No. 173-A (and in No. 173) were all acquired by the Federal Government before the end of 1893; we are informed that the period was from 1872 through 1893. It was the Cherokee nation or tribe as it then existed which suffered the wrong. See, e.g., McGhee v. United States, supra; Yuchi v. United States, supra; Minnesota Chippewa Tribe v. United States, supra. The award itself need not say in precise terms that it is for the benefit of the Cherokee Nation “as it existed or was constituted before 1893 (or from 1872-1893)” so long as it is plain that that is the time and the group involved. The other branches of government can then decide the composition of the Cherokee tribe as of that period. Appellants will be able to assert that they should be included on this basis while appellee, the organized Cherokee Nation, can contend otherwise. There may possibly be solutions, whole or partial, other than straight-out resolution of the parties’ conflicting theories of the function of the Dawes roll. We do not mean to say, for instance, that it would necessarily be improper for Congress to determine that the present organized Cherokee Nation has exclusively succeeded to the rights of the Cherokee tribe as it existed before 1893, and that, in order to share in the award, appellants must seek recognition as members of the appellee Cherokee Nation through whatever channels are open. Cf. 28 U.S.C. § 1360 (1964). Nor do we pass upon the power of Congress, should it uphold appellants’ participation rights, to charge the award in No. 173-A with the part of the payment already made in No. 173 which would or could have been allocable to appellants.
*53 On these grounds, and with, these explanations and directions for the future proceedings, we sustain the Commission’s order denying summary judgment to appellants. We add, though this may be academic or purely formal, that unlike the Commission we consider Commission Docket No. 123 (in which appellants filed their original claim) as still alive — barely breathing — and our affirmance will be both in Docket No. 123 and in Docket No. 173-A (the two suits in which appellants filed their motion).

Affirmed

 “The line of their argument is as follows: (a) Prior to the Dawes Commission’s enrollment work there were earlier rolls of the Cherokees on which appellants’ Freedmen admittedly appeared, particularly the Kern-Clifton roll; (b) this Kern-Clifton roll was drawn up as a result of litigation in which this court held the Cherokee Freedmen, as a class, entitled to participate on an equal basis with the blood Cherokees in the funds and properties of the Nation (Whitmire v. Cherokee Nation and United States, 30 Ct. Cl. 138, 180 (1895), see 223 U.S. 108, 114—115) ; (c) appellants’ Freedmen received benefits from being on the Kern-Clifton roll, including participation in the monies paid for the so-called Cherokee ‘strip’ or ‘outlet’ sold by the Cherokee Nation in 1893; (d) the Dawes Commission subsequently struck their names from the Cherokee rolls for the purposes of land allotments, but this court has said that nevertheless ‘the Kern-Clifton roll was good and valid for the purpose for which it was made and was in nowise affected by the subsequent enrollment by the Dawes Commission made in the manner provided by Congress’ for allotment purposes (Cherokee Nation v. United States, 85 Ct. Cl. 76, 100 (1937)); (e) it follows, appellants argue, that the Freedmen who were on the Kern-Clifton roll but were later removed from the Dawes roll remain a group entitled (as a matter of law)* to participate in monetary benefits coming to the Cherokee Nation — aside from benefits connected with land allotments; and finally (f) this claim is covered by the petition filed by appellants in the Indian Claims Commission.”

The argument is that no proof of individual facts would be necessary. All persons on the Kern-Clifton roll would, without more, be entitled to participate. All of the Freedmen represented by appellants appeared on the Kern-Clifton roll (or their ancestors did).”

 Appellants’ computation Is that the Cherokee Freedmen, as a whole, represented some 15% of the entire Cherokee Nation, and the Dawes Commission rejected over 37% of these Freedmen — giving appellants, representing the rejected Freedmen, 5.65% as their share.
The motion for summary judgment sought the following relief:
"Judgment is herein sought for :
“1. An amount equal to 5.65 per cent of all sums awarded as judgment in favor of the Cherokee Nation in Docket No. 173 before the Indian Claims *44 Commission and paid or payable to citizens of tie Cherokee Nation pursuant to Public Law 87-775 (Act of Oct. 9, 1962, 76 Stat. 776).
“2. Interest at the rate of 5 per cent per annum on the sum awarded in accordance with Paragraph 1, supra, from the date of judgment in Docket No. 173.
“3. An amount equal to 5.65 per cent of any sum awarded to the Cherokee Nation as judgment in Docket No. 173-A.
“4. Interest on the aggregate amount awarded as judgment In favor of these plaintiffs and intervenors at the rate of 5 per cent per annum from the date of judgment.
“5. An order decreeing that the aggregate amount awarded as judgment in favor of these plaintiffs and intervenors, upon all claims asserted by them in Docket Nos. 123 and 173-A, is a charge upon and payable from the proceeds of any judgment awarded in favor of the Cherokee Nation in Docket No. 173-A.
“6. Such other relief as may be proper.”

 See Thompson v. United States, 122 Ct. Cl. 348, cert. denied, 344 U.S. 856 (1952); McGhee v. United States, 122 Ct. Cl. 380, 391 ff., cert. denied, 344 U.S. 856 (1952); Risling v. United States, 122 Ct. Cl. 419, cert. denied, 344 U.S. 856 (1952); Upper Chehalis Tribe v. United States, 140 Ct. Cl. 192, 155 F. Supp. 226 (1957); Nooksack Tribe v. United States, 162 Ct. Cl. 712, 714-15 (1963), cert. denied, 375 U.S. 993 (1964); Absentee Shawnee Tribe v. United States, 165 Ct. Cl. 510, 514. 522—25 (1964); Peoria Tribe of Oklahoma v. United States, 169 Ct. Cl. 1009 (1965); Red Lake and Pembina Bands v. United States, 173 Ct. Cl. 928, 939-43, 355 F. 2d 936, 942-45 (1965); Snoqualmie Tribe v. United States, 178 Ct. Cl. 570, 579-83, 372 F. 2d 951, 955-58 (1967); United States v. Northern Paiute Nation, 183 Ct. Cl. 321, 330-32, 393 F. 2d 786, 791-92 (1968).

 Thompson v. United States, 122 Ct. Cl. 348, 359-60, cert. denied, 344 U.S. 856 (1952); McGhee v. United States, 122 Ct. Cl. 380, 396, cert. denied, 344 U.S. 856 (1952); Minnesota Chippewa Tribe v. United States, 161 Ct. Cl. 258, 271 n.11, 315 F. 2d 906, 914 n.11 (1963); Peoria Tribe v. United States, 169 Ct. Cl. 1009, 1011-12 (1965); Red Lake and Pembina Bands v. United States, 173 Ct. Cl. 928, 942-43, 355 F. 2d 936, 944 (1965); Confederated Tribes of Warm Springs Reservation v. United States, 177 Ct. Cl. 184, 210 (1966); Snoqualmie Tribe v. United States, supra, 178 Ct. Cl. 570, 581-82, 585, 372 F. 2d 951, 957, 959 (1967); United States v. Northern Paiute Nation, 183 Ct. Cl. 321, 332-33, 393 F. 2d 786, 792 (1968). But cf. Prairie Band of Potawatomi Indians v. United States, 143 Ct. Cl. 131, 165 F. Supp. 139 (1958), cert. denied, 359 U.S. 905 (1959), infra, note 7.
Several of these opinions recognized explicitly that this rule—that Congress (or its designee) must decide the composition of the group in whose interest the judgment is given—is conceptually distinct from the independent question of the capacity of the claimant to sue, or the nature of the “identifiable group”. See Thompson, Bed Lake and Pembina Bands, Confederated Tribes of Warm Springs Reservation, Snogualmie Tribe, and Northern Paiute Nation, supra.

 We are told that, in that instance, appellants’ group made no effort to present to Congress its case for participation.

 “We do not decide whether or not the Treaty of May 30, 1854, supra, made the consolidated Peoria Tribe the full and only successor to claims of the Wea Nation arising out of events prior to that treaty; nor do we decide, on the other hand, that only descendants of Weas can benefit from the award in this case. These and like issues we leave open for decision by the legislative and executive branches.” 169 Ct. Cl. at 1012.

 We understand Prairie Band of Potawatomi Indians v. United States, supra, 143 Ct. Cl. 131, 165 F. Supp. 139 (1958), cert. denied, 359 U.S. 905 (1959), as another case in which a. petitioner for intervention before the Commission took the position that the suing groups (Kansas and Oklahoma bands of Pota-watomis) could not and would not represent the interests of all those claiming the right to participate in any recovery for a wrong done to the Potawatomi Nation in 1846. The award was not to the suing groups but to the “Patawatomi Nation, as created by tile treaty of June 5, 17, 1846, and as it then existed” (143 Ct. Cl. at 133). The Commission and this court denied intervention on the ground that the petitioners for intervention had no claim to participation. Insofar as the court may have decided for itself the merits of the right to participate, it did so in the absence (so far as we can tell) of any argument that there was no jurisdiction to determine that particular issue finally. Moreover, the prime issue before the court was the right to intervene, and it may well be that on that limited question the court has some power to consider the merits in order to decide whether or not to allow intervention. In the present case, appellants have already been allowed to intervene in Docket No. 173-A and as such can press their claim upon Congress (see infra).

 See, also, Yuchi Tribe v. United States, 136 Ct. Cl. 433, 435-36, 437, 450, 145 F. Supp. 206, 207, 208, 216 (1956), cert. denied, 352 U.S. 1016 (1957); Minnesota Chippewa Tribe v. United States, 161 Ct. Cl. 258, 271, 315 F. 2d 906, 914 (1963); Spokane Tribe v. United States, 163 Ct. Cl. 58, 72 (1963); Red Lake and Pembina Bands v. United States, supra, 164 Ct. Cl. 389, 399 (1964); Confederated Tribes of Warm Springs v. United States, 177 Ct. Cl. 184, 210 (1966); Snoqualmie Tribe v. United States, 178 Ct. Cl. 570, 581, 582-83, 372 F. 2d 951, 957, 958 (1967); United States v. Seminole Indians, 180 Ct. Cl. 375, 378 (1967); United States v. Northern Pauite Nation, 183 Ct. Cl. 321, 332-33, 393 F. 2d 786, 792 (1968).

 The award In Docket No. 173 has been disbursed pursuant to the Act of Oct. 9, 1962, 76 Stat. 776. See note 5, supra, and text infra.

 In denying the appellee Cherokee Nation’s motion to dismiss the petition of intervention, the Commission’s opinion said that appellants, in intervening in Docket No. 173-A, “only seek to ensure that whatever interest the inter-veners may be found to have in Docket No. 173-A be protected. The right to ensure that protection was granted the Docket 123 plaintiffs [appellants here] by this Commission in its order granting motion to intervene in Docket No. 173-A of October 12, 1964. That, and no more.” 17 Ind. Cl. Comm. 331, 335 (1966).