Durfee, Judge,
delivered the opinion of the court:
This case is an appeal from a judgment by the Indian Claims Commission which found that appellant was an identifiable tribe of Indians which used and occupied exclusively only 80,590 acres of the 498,080 acres claimed by the tribe under aboriginal Indian title in the State of Washington. The appeal is also taken from the award by the Commission of 65 cents per acre as of March 8, 1859 which was determined as the date of taking. The parties stipulated that the Government was entitled to offsets of $3,000, and final judgment was entered by the Commission for $49,383.50.[1]
The Commission has correctly concluded that the right given the Nooksack Tribe by Congress to sue in a prior case *715 under a special Jurisdictional Act,[2] together with further and consistent tribal recognition by the Government, was sufficient to establish that the Nooksack Indians were an identifiable tribe, legally authorized to submit their claim.
The appellant tribe urges that since they were not a party to the Point Elliott Treaty of 1855 (12 Stat. 927) their rights remained unimpaired, and there was no taking of their lands until United States citizens first came into the area as homesteaders in 1890. However, the lands ceded to the Government by the Treaty included all of the area involved in this case. In all of the claims of neighboring tribes, the time of taking was established by the Commission in 1859, which was the year of ratification of the Point Elliott Treaty. The United States has continued to regard and to treat all the lands ceded to it by the Treaty as public lands to be fully disposed of by the Government as and when it saw fit to do so. We conclude that the time of taking by the United States of lands claimed by the Tribe, has been correctly determined by the Commission to have been March 8, 1859.
The area of 498,080 acres claimed by the appellant Nook-sack Tribe lies entirely within the boundaries of the cession made in the Point Elliott Treaty of 1855. The claimed area includes substantially all the territory between the Canadian border on the north, and a point below Lake Whatcom on the south, and from the crest of the Cascade Mountains on the east to Puget Sound on the west in the northwest corner of the State of Washington.
The Nooksack Tribe was among the Salish speaking Indian tribes found living in the Puget Sound area in Oregon territory at the time the territory was established in 1848. The Commission has found that the tract of land exclusively occupied, held, and used by the Nooksack Tribe comprised 80,590 acres. This tract included their village areas along the Nooksack Eiver and surrounding subsistence areas, and was described by the Commission as follows:
Commencing at the present town of Lynden, Washington, on the Nooksack river of the northwest corner, thence east to the town of Maple Falls located on the north fork of the Nooksack river, thence southwest *716 across tbe middle fork of tbe river to tbe present town of Acme, Washington, located on tbe south, fork of the Nooksack river, thence northwest to the point of beginning.
This tract is a triangular area, with each of the three points of the triangle located at one of the three present towns above designated. The Commission found that in 1859, the tribe occupied three principal village sites located along the valley of the main Nooksack Eiver within the above designated tract, and that the population of the tribe at that time was approximately 450.
In Duwamish et al, supra, this court said (at p. 606):
The Nooksacks were never a large tribe; they were as a rule peaceable and industrious, they cultivated the soil to some extent, and preferred the chase to fishing or exploiting the adjoining bays and streams as most of the so-called “Sound” Indians did. * * *
The Commission has found that the economy of this small tribe was centered around the Nooksack Eiver Valley, where there was an abundance of fish, game, root crops and berries. This made it possible for them to obtain most of their subsistence from the areas in the vicinity of their three main villages.
The appellant contends that the award of 80,590 acres to the Nooksack Tribe is very small as compared to land awards made by the Commission to other neighboring Puget Sound Tribes as grounds for error. Without accepting this standard of comparison as determinative, we observe that most of these other awards cited by the appellant are in the same general range of proportionate area as the Nooksack award.
This court has already considered the approach taken by the Commission in computing the area of aboriginal lands of the Nooksacks. In Upper Chehalis Tribe, et al. v. United States, 140 Ct. Cl. 192 (1957), 155 F. Supp. 226, this court in pointing out the difficulty of determining exact boundaries of Indian title lands, commented (at pp. 196-197) :
We are of the opinion that the approach of the Commission to the problems in the Nooksack and Muokle-shoot cases was a sound and reasonable one, and that the problems in the instant case, being nearly identical, would seem to be amenable to a similar approach.
*717 The findings and determination by tbe Commission (3 Ind. Cl. Comm. 479, 492) that there was a taking in 1859 of the tract of land described, comprising 80,590 acres exclusively used and occupied by the Nooksack Tribe, is supported by substantial evidence.
The Commission has found that there was no “actual market” for the Nooksack area in 1859. There was virtually no white population; there were no overland roads or railroads, and all transportation was upon water. Most of the tract was covered by heavy timber, largely Douglas fir. The Commission found that:
While the Nooksack tract contained some fertile river bottom land, much of it was subject to flooding and the cost of clearing the heavy timber made the land practically valueless for any agricultural purposes other than to provide subsistence to individual settlers. There were no minerals within the tract.
The Commission, after considering all the evidence in the record as to value, concluded that the 80,590 acres of Nook-sack land had an average fair market value of 65 cents per acre on March 8,1859, or $52,383.40, based upon the potential value of the timber to a willing buyer and seller in March 1859 and the highest and best use of the land at that time. As of that date, the forests within the Nooksack area were found to be comparable in their stand of timber to the average of the surrounding Puget Sound area, but this timber was relatively inaccessible and remote from a ready market. The potential value of the timber could be realized only after arrival of the railroad and clearing of the log jams in the Nook-sack Eiver to furnish transportation, and would also have to await exhaustion of the millions of acres of more accessible and readily marketable timber which lay to the south along the shore of Puget Sound. A prospective purchaser would also have considered the existing danger of loss by forest fires then causing thousands of dollars in damage every year in this area. There was no evidence of sales of comparable timber tracts in 1859 or prior thereto, but choice timber lands within a mile and a half from Puget Sound and in the immediate vicinity of a sawmill were sold within the following four years at $1.50 per acre.
*718 The expert testimony for the claimant before the Commission was that the net value of the timber was $2.50 per acre, and that the value of the tract, based upon what the Nook-sack Indians could have earned if employed by white settlers rather than obtaining their own subsistence from their land, was $12.58 per acre. Both of these appraisal figures were multiplied by a 2.7 factor by claimants’ expert on the claim that this factor represented the amount by which the dollar has depreciated since 1859. The Commission correctly concluded that the claimant tribe was not entitled to any dollar increment to be added to the fair market value of the lands as of March 8,1859. This is not a claim for just compensation for a taking under clause 1 of section 2 of the Indian Claims Commission Act. The Commission has held, and we agree, that the claim for the taking of Indian title land falls under clause (4) of section 2 in which the word “taking” used with reference to “Indian title” land was not used to denote a taking in the constitutional sense. Otoe and Missouria Tribe of Indians v. United States, 131 Ct. Cl. 593 (1955), 131 F. Supp. 265, cert. denied 350 U.S. 838. The measure of recovery under that clause is the value of the land at the time of taking without any increment for delay in payment whether by way of interest or allowance for dollar devaluation. See The Assiniboine Indian Tribe v. United States, 1 Ind. Cl. Com. 530.
Presumably, the appellant is attacking the findings of the Commission on acreage and value on the ground that they are not supported by substantial evidence as required by the Indian Claims Commission Act. (Section 20(b) of the Indian Claims Commission Act.) We note that appellant has not pointed to any specific finding which it feels is not supported by substantial evidence in the whole record before the Commission. In general, the appellants have based their objection to the ultimate finding of both acreage and value on (1) the fact that the Commission has found larger areas to have been owned by neighboring tribes, and (2) has assigned higher per acre values to the lands involved in the suits brought by those tribes under the Indian Claims Commission Act. This sort of broadside attack on the Commission’s findings and conclusions does not properly represent assignment *719 of error under section 20(b) of the Act. It is not the function of an appellate court to comb the record to discover for itself defects in the findings of fact made by the trial court without any assistance by way of record reference from the appellant, and although in the early appeals from the Commission the court was more inclined to be lenient in this regard, the proper method of objecting to findings of fact has been too often discussed by this court to warrant our going into the matter another time. Fortunately, appellee has analyzed the record before the Commission in its effort to demonstrate the soundness of the Commission’s findings and our review of the record persuades us that the Commission’s findings on both acreage owned and the value as of March 8, 1859, are supported by substantial evidence in the record as a whole.
The determination of the Indian Claims Commission is affirmed.

Affirmed.

 The findings of fact and decisions of the Indian Claims Commission rendered at various stages of this litigation are reported at 3 Ind. Cl. Comm. 479, 492; 6 Ind. Cl. Comm. 578; 6 Ind. Cl. Comm. 681; and 10 Ind. Cl. Comm. 219.

 Duwamish et al Indians v. United States, 79 Ct. Cl. 530 (1934) cert. denied 295 U.S. 755.