Ind.Cl.Comm. Docket No. 252

The MIAMI TRIBE OF OKLAHOMA,
Appellant,

v.

The UNITED STATES, Appellee.

Ind.Cl.Comm. Docket No. 338

The PEORIA TRIBE OF OKLAHOMA,
Appellant,

v.

The UNITED STATES, Appellee.

Ind.Cl.Comm. Docket No. 29–C

HANNAHVILLE INDIAN COMMUNITY,
Forest County Pottawatomie Community, The Pottawatomie Indians of Indiana
and Michigan, Incorporated, and Pottawatomie Nation of Indians, Appellant,

v.

The UNITED STATES, Appellee.

Ind.Cl.Comm. Docket No. 130

Ira Sylvester GODFROY et al. ex rel.
The MIAMI INDIAN TRIBE,
Appellant,

v.

The UNITED STATES, Appellee.

Appeal Nos. 9–78, 10–78, and 11–78.

United States Court of Claims.

Jan. 23, 1980.

Edwin A. Rothschild, Chicago, Ill., attorney of record, for appellant in Docket No. 9–78.

Jack Joseph, Chicago, Ill., attorney of record, for appellants in Docket No. 10–78.

Robert C. Bell, Jr., New Canaan, Conn., attorney of record, for appellants in Docket No. 11–78.

Robert L. Kiley, Marion, Ind., attorney of record, for appellants in Docket No. 11–78.

D. Lee Stewart, Washington, D. C., with whom was Asst. Atty. Gen., James W. Moorman, Washington, D. C., for appellee.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KUNZIG, Judge.

KUNZIG, Judge:

This Indian Claims case returns to us [1] on several issues involving valuation by the Indian Claims Commission (Commission) of lands ceded by appellants to the United States in the 1795 Treaty of Greenville, 7 Stat. 49, and the effect upon appellants' claims of consideration they received from the Government under the treaty. Appellants contest the Commission's decision denying the additional compensation to the Miami Tribe of Oklahoma (Docket No. 252), the Miami Indian Tribe (Docket No. 130), and the Peoria Tribe of Oklahoma (Docket No. 338) (suing on behalf of the Wea Tribe of Indians) (hereinafter collectively referred to as Miami-Weas). *Pottawatomie Tribe of Indians v. United States*, 43 Ind.Cl.Comm. 687, 747 (1978). Appellants Pottawatomie Indians of Indiana (Docket No. 29–C) question the amount awarded them by the Commission. *Id.* For the reasons discussed below, we affirm, with one exception, the Commission's decision since its findings of fact are based upon substantial evidence and its conclusions of law are correct.

In 1795, appellants' ancestors ceded land in Illinois, Indiana and Ohio to the United States in the Treaty of Greenville, *supra.* The treaty also provided that the Government would give the tribes $20,000 worth of goods and perpetual annuities of $500 or $1000 per tribe. Treaty of Greenville, Article IV, 7 Stat. 49, 51. *See, Pottawatomie Tribe v. United States*, 43 Ind.Cl.Comm. 687, 707 (1978). After passage of the Indian Claims Commission Act (Act) in 1946, 25 U.S.C. §§ 70–70v (1976), the tribes claimed that the consideration they received for their cessions in 1795 was unconscionable within the meaning of the Act. *Id.* at § 70a(3). Consequently, they sought adequate compensation for the cessions as provided in the Act.

Initially, the Commission determined which tribes held aboriginal title to the various tracts of land ceded.[2] It also deter-

---

1. This case was previously before the court on the question of which tribe(s) held aboriginal title to the various lands ceded. *Strong v. United States*, 518 F.2d 556, 207 Ct.Cl. 254 (1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). The court affirmed the Commission except as to its determination of title to the Ouatanon enclave. *Id.* 518 F.2d at 571, 207 Ct.Cl. at 282. The case was remanded to the Commission on this issue and to determine the amount, if any, which the various claimants were entitled to recover.

2. See note 1, *supra*, and *Strong v. United*

mined the land and consideration should be assessed as of the effective date of the treaty, August 3, 1795. *Strong v. United States*, 31 Ind.Cl.Comm. 89 (1973). The Commissioners then determined, in the decision presently before us on appeal, the value of the lands ceded, the value of consideration received by the tribes, and whether that consideration was unconscionable within 25 U.S.C. § 70a(3) (1976).

■ As to appellants Miami-Weas (Docket Nos. 130, 252 and 338), the Commission found that the consideration received by appellants was not unconscionable.[3] Thus, these claims were dismissed. *Pottawatomie Tribe v. United States*, 43 Ind.Cl.Comm. 687, 747–48 (1978). We consider, with the exception of the portages discussed below, the Commission's findings of facts supported by substantial evidence in the record

States, 31 Ind.Cl.Comm. 89 (1973). The Commission has decided title to the Ouatanon enclave, as directed, in the decision below. No appeal was taken from that new determination. See *Pottawatomie Tribe v. United States*, 43 Ind.Cl.Comm. 687, 689–91 (1978).

3. The Commission valued the lands ceded and consideration received as follows:

|  | Value of Cessions | Value of Consideration |
| --- | --- | --- |
| Miami Tribe | $35,022.47 | $33,220.00 |
| Weas (Peoria Tribe) | $17,511.23 | $11,120.00 |
| Pottawatomies | $58,675.60 | $22,100.00 |

The Pottawatomies were considered to have received unconscionable consideration, but not the Miamis or Weas. These determinations as to unconscionability are in line with our cases. *See, e. g., Lummi Tribe of Indians v. United States*, 181 Ct.Cl. 753 (1967); *Miami Tribe of Oklahoma v. United States*, 281 F.2d 202, 150 Ct.Cl. 725 (1960), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1350, 6 L.Ed.2d 383 (1961).

4. We note briefly two contentions raised by appellants.

First, we reject summarily appellant Pottawatomie Tribe's argument that it is entitled to an increased award because of the dollar's devaluation since 1795. The court has repeatedly rejected such arguments absent specific direction by Congress to allow interest or account for the effects of inflation. *Nooksack Tribe of Indians v. United States*, 162 Ct.Cl. 712, 718 (1963), *cert. denied*, 375 U.S. 993, 84 S.Ct. 633, 11 L.Ed.2d 479 (1964). *See also, United States v. Sioux Nation of Indians*, 518 F.2d 1298, 207 Ct.Cl. 234 (1975), *cert. denied*,

and conclusions of law in this regard correct.

The Commission also examined the claims of appellant Pottawatomie Indians (Docket No. 29–C) and determined that they received unconscionable consideration. Thus, payment of $58,675.60 to the Pottawatomie less any offsets to which the Government is entitled, was ordered. *Id.* Again, with the exception of portages ceded, we affirm the decision of the Commission as supported by substantial evidence and encompassing correct conclusions of law.

■ As stated, both the Miami-Weas and Pottawatomie challenged the Commission's decision on various grounds. Since we affirm for substantially the reasons stated by the Commission in its opinion, 43 Ind.Cl.Comm. 687 (1978), except as to the two portages, we will limit our discussion to the issues involving these portages.[4]

423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975); *United States v. Delaware Tribe*, 427 F.2d 1218, 192 Ct.Cl. 385 (1970).

Second, the Miami-Wea complain that the Sioux Amendments, 25 U.S.C. § 70a (1976) *as amended by* Pub.L.No.93–494, 88 Stat. 1499, 1500 (1974), prohibit the Commission from taking goods delivered to the tribes into account as consideration received for their cessions. In this case, the Commission determined that it could take the value of goods delivered to the Indians into account in order to determine whether the tribes received unconscionable consideration. Once the Commission determined that the consideration was unconscionable, however, it did not deduct the value of the goods from the ultimate award. That is the proper procedure under the Sioux Amendments.

Congress amended section 2 of the Indian Claims Commission Act, 25 U.S.C. § 70a, to provide that "expenditures for food, rations, or provisions shall not be deemed payments on the claim." Pub.L.No.93–494, 88 Stat. 1499, 1500 (1974). Chief Judge Friedman, writing for this court in *Sioux Nation of Indians v. United States*, 601 F.2d 1157, 220 Ct.Cl. —— (1979), stated, "The legislative history of the 1974 amendment indicates that the amendment was intended to apply to the calculation of offsets *following an award*, and not to the initial determination whether plaintiff is entitled to recover . . . ." *Id.* at 1163, note 4 (emphasis added). While the *Sioux* case involved a Fifth Amendment taking issue, we consider the statute to apply exactly alike in an unconscionable consideration case. As the court stated in *Sioux*, the legislative history aptly supports this conclusion. *Id.*

#### Miami-Wea Portage

■ The Miami-Wea portage is a two-mile strip running from Royce Area 16 to Royce Area 17 in Indiana.[5] The Commission found that the two-acre area's highest and best use was as a portage and valued it at a total of $2.50. By contrast, the Government's expert valued the land at $1500 and appellants' evidence showed the land was worth $2400. We conclude that the Commission's finding as to the value of this portage is not supported by substantial evidence, see, *Confederated Tribes of Warm Springs Reservation v. United States*, 177 Ct.Cl. 184 (1966), or adequate explanation. Thus, we must correct the Commission in this aspect.[6] 25 U.S.C. § 70v (1976). *See, Strong v. United States*, 518 F.2d 556, 207 Ct.Cl. 254, *cert. denied*, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975).

The Commission's error must also be sufficiently material as to result in prejudicial error. 25 U.S.C. § 70s(b) (1976); *Yakima Tribe v. United States*, 158 Ct.Cl. 672, 695 (1962). As we will explain, while the Commission valued the Miami-Wea portage improperly, even accepting appellants' figure as correct, appellants are still not entitled to an unconscionable consideration award.

Thus, we must affirm the Commission's dismissal of the Miami-Wea claims (Docket Nos. 130, 252 and 338), 25 U.S.C. § 70s(b) (1976).

The decision below found that the Miamis ceded land worth $35,022.47 for consideration of $33,220.00. The Miamis owned two-thirds of the portage and the Weas the remaining one-third. Accepting the Miami's valuation of the portage as correct, the value of their land should have been increased by $1600. In other words, their total land value should have been $36,620.80.[7] The corresponding figure for the Weas is $18,310.40.[8] Thus, the Miami-Wea lands were worth 4.6 per cent more than the Commission's evaluation.[9] This relatively minor change does not alter the Commission's conclusion that the consideration received for the ceded lands was not so grossly disproportionate as to be unconscionable. *Compare, Lummi Tribe of Indians v. United States*, 181 Ct.Cl. 753 (1967); *Osage Nation of Indians v. United States*, 119 Ct.Cl. 592, 97 F.Supp. 381, *cert. denied*, 342 U.S. 896, 72 S.Ct. 230, 96 L.Ed. 672 (1951). Consequently, the Commission's error in evaluating the portage did not result

The Conference Report, for instance, states that the amendments provide: "that expenditures of the United States of funds for food, rations or provisions could not be offset by the United States *against any award* of the Commission to an Indian tribe or other claimant." Conf.Rep.No.93-1446, *reprinted in* [1974] U.S. Code Cong. & Admin.News, pp. 6118-19. Thus, we affirm the methodology used by the Commission. The value of "food, rations or provisions" may not be deducted from an award. *Prairie Band of Pottawatomie Tribe v. United States*, 564 F.2d 38, 215 Ct.Cl. 1 (1977), but the value of such goods may be considered in determining whether the Government owes any award to begin with. *Sioux Nation, supra.*

5. The term "Royce Area" refers to numberings made by Charles C. Royce in mapping the Indian Nations. See, Royce, *Indian Land Cessions in the United States*, 18th Annual Report of the Bureau of American Ethnology (1899).

6. Previously, we were constrained to remand all errors to the Commission for correction. *Lummi Tribe of Indians v. United States*, 181 Ct.Cl. 753 (1967). With the expiration of the Commission in 1978, however, Congress conferred full jurisdiction upon this court to adju-

dicate all aspects of these cases. 25 U.S.C. § 70v (1976), *as amended* by Pub.L.No.94-465, § 2, 90 Stat. 1990 (1976). Thus, we have full jurisdiction to decide these matters here.

7. $35,022.47 minus $2.50 value of portage accounted for in that figure plus the "true value" of $1600.

8. For the Weas, they ceded land worth $17,511.23 for $11,120.00 in consideration. Increasing their figure by one-third of the $2400 yields them a new total land value of $18,310.40.

9.
$$\frac{\$36,620.80 - \$35,022.47}{\$35,022.47} \times 100\% = 4.6\%$$

$$\frac{\$18,310.40 - \$17,511.23}{\$17,511.23} \times 100\% = 4.6\%$$

These proportions should be the same since both tribes had a constant proportional interest in the lands valued.

in prejudicial error and its dismissal of Docket Nos. 130, 252 and 338 is affirmed.

### Pottawatomie Portage

■ Similarly to the Miami-Wea claim, the Commission improperly valued the Pottawatomie portage from Royce Area 16 to the Illinois River. The appellants' portage was valued at a total of $10 by the Commission, whereas the Government's and appellants' experts valued the lands at $1000 and $9600 respectively. *Pottawatomie Tribe v. United States*, 43 Ind.Cl.Comm. 687, 702 (1978). Since the Pottawatomies are entitled to recover, less any allowable offsets, however, their award must be adjusted to reflect the appropriate value of the portage.

As we stated in note 6, *supra*, Congress gave this court full jurisdiction to deal with these Indian claims. 25 U.S.C. § 70v (1976). In this case, we see no need to create further delay by referring valuation of the Pottawatomie portage to the trial division. Rather, this court has determined the appropriate amount to add to appellants' award after an extensive review of the record, facts and applicable law.

■ There is a substantial number of factors which we must consider in determining the value of appellants' land, *United States v. Emigrant New York Indians*, 177 Ct.Cl. 263, 285 (1966), including population, accessibility, proximity to settled areas and others. The Commission properly determined that this land's highest and best use was as a passage between two enclaves. 43 Ind.Cl.Comm. 687, 737 (1978). Nonetheless, while the enclave's potential as a toll road does not have a separate value, *United States v. Northern Paiute Nation*, 16 Ind.Cl. Comm. 215 (1965), aff'd 183 Ct.Cl. 321 (1968), it *is* worth more than the other areas where the highest and best use is subsistence farming. This is amply evidenced by the fact that even the Government estimated the value of this portage at considerably more than did the Commission, *supra*.

Examining the arguments and record in light of the relevant factors, we find that appellants' expert, in this one instance, valued the land most appropriately.[10] Hence, appellant Pottawatomie tribe's award is increased by $9600 minus the $10 which the Commission previously awarded for the portage. Thus, the Pottawatomie's total award is $68,265.60 less any offsets to which the Government is entitled.

In summary, we affirm the decision of the Commission except as to the value of the portage in Docket No. 29–C. The Miami-Wea's portage was improperly valued, but since no prejudicial error resulted, the dismissal of Dockets Nos. 130, 252 and 338, is affirmed. The Pottawatomie portage also was valued improperly and they are entitled to an additional $9600 making their total award $68,265.60 less any offsets allowable to the Government. Accordingly, upon thorough consideration of the record, parties' submissions, and after oral argument, we affirm the decision of the Indian Claims Commission except as to the Pottawatomie portage in Docket No. 29–C. Appellant's award in Docket No. 29–C is hereby modified: Appellants are awarded $68,265.60 less any offsets to which the Government is entitled.

Additionally, the Commission's order that Docket No. 29–C proceed to "a determination of the amount of any gratuitous offsets allowable," 43 Ind.Cl.Comm. 687, 748 (1978), is modified under the new statutes, see note 6, *supra*. Hence, this case is referred to the trial division under Rule 131 to determine

---

10. All told, the Commission's basic error was in using the same procedure to value portages as it did for farmland. *See, Pottawatomie Tribe v. United States*, 43 Ind.Cl.Comm. 687, 705 (1978). Even the Commission, however, found that appellants' portage had some strategic value. *Id.* at 737. Since appellants' expert took this factor into account, it is a better figure to use than the Government's. The appellee's expert discounted the values by too much for this portage. *Id.* at 699, 704. The flaw which the Commission found in the tribe's expert's valuation as to the subsistence farming tracts (i. e., that the acres he compared appellants' land with were more highly populated), does not have such an adverse effect upon the valuation of the portages.

the amount, if any, of gratuitous offsets to which the Government is entitled.